1   ANDREW R. LIVINGSTON (State Bar No. 148646)
    alivingston@orrick.com
2   ERIN M. CONNELL (State Bar No. 223355)
    econnell@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
4   405 Howard Street
    San Francisco, CA 94105-2669
5   Telephone:    +1-415-773-5700
    Facsimile:    +1-415-773-5759
6
    Attorneys for Defendants
7   Chase Home Finance, LLC (on behalf of itself and as successor
    in interest to Chase Manhattan Mortgage Corporation) and
8   James Boudreau
9
                    UNITED STATES DISTRICT COURT
10
                  SOUTHERN DISTRICT OF CALIFORNIA
11
12
    CHRISTOPHER CLARK and JAMES          Case No.  08-CV-0500 JM RBB
13  RENICK, individuals,
                                         **EXHIBITS 3-8 TO DEFENDANTS
14              Plaintiffs,              CHASE HOME FINANCE, LLC,
                                        CHASE MANHATTAN MORTGAGE
15         v.                            CORPORATION AND JAMES
                                        BOUDREAU'S REQUEST FOR
16  CHASE HOME FINANCE, LLC; a Delaware  JUDICIAL NOTICE IN SUPPORT OF
    LLC doing business in California; CHASE  MOTION FOR JUDGMENT ON THE
17  MANHATTAN MORTGAGE                   PLEADINGS PURSUANT TO RULE
    CORPORATION, a New Jersey corporation  12(C) OR, IN THE ALTERNATIVE,
18  doing business in California; JAMES  MOTION FOR PARTIAL SUMMARY
    BOUDREAU, an individual; and DOES 1-25,  JUDGMENT PURSUANT TO RULE
19                                       56**
                Defendants.
20                                       Date:      May 23, 2008
                                         Time:      1:30 p.m.
21                                       Dept.:     16
                                         **Judge:     The Hon. Jeffrey T. Miller**
22
23
24
25
26
27
28

1

## INDEX OF EXHIBITS

2

| No. | Exhibit | Page |
|-----|---------|------|
| 3. | Declaration of Filomena M. Yeroshek | 31 |
| 4. | All versions of Assembly Bill 302 | 33 |
| 5. | Post-enrollment documents re Assembly Bill 302 | 37 |
| 6. | Excerpt from 1959 Summary Digest of Statutes Enacted | 45 |
| 7. | Excerpt from Sept.–Oct. 1959 Journal of the State Bar of California | 47 |
| 8. | Excerpt from 1959 Legislative Report | 52 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 3

LEGISLATIVE
INTENT SERVICE

712 Main Street, Woodland, CA 95695
(800) 666-1917 • (916) 441-7959 • Fax: (530) 668-5866

## DECLARATION OF FILOMENA M. YEROSHEK

I, Filomena M. Yeroshek, declare:

I am an attorney licensed to practice before the courts of the State of California, State Bar No. 125625, and am employed by Legislative Intent Service, a company specializing in researching the history and intent of legislation.

Under my direction and the direction of other attorneys on staff, the research staff of Legislative Intent Service undertook to locate and obtain all documents relevant to the enactment of Assembly Bill 302 of 1959. Assembly Bill 302 was approved by the Legislature and was enacted as Chapter 1066 of the Statutes of 1959.

The following list identifies all documents obtained by the staff of Legislative Intent Service on Assembly Bill 302 of 1959. All listed documents have been forwarded with this Declaration except as otherwise noted in this Declaration. All documents gathered by Legislative Intent Service and all copies forwarded with this Declaration are true and correct copies of the originals located by Legislative Intent Service. In compiling this collection, the staff of Legislative Intent Service operated under directions to locate and obtain all available material on the bill.

### ASSEMBLY BILL 302 OF 1959:

1. All versions of Assembly Bill 302 (Gaffney-1959);
2. Procedural history of Assembly Bill 302 from the 1959 Assembly Final History;
3. Post-enrollment documents regarding Assembly Bill 302;
4. Excerpt regarding Assembly Bill 302 from the 1959 Summary Digest of Statutes Enacted, prepared by Legislative Counsel;
5. Excerpt regarding Assembly Bill 302 from the Journal of the State Bar of California, Vol. 34, No. 5, September-October 1959;

Exhibit 3
31

6.     Excerpt regarding Assembly Bill 302 from the 1959 <u>Legislative Report</u>, prepared by the United Steelworkers of America;

7.     Excerpt regarding Assembly Bill 302 from <u>Labor Legislation</u>, Report issued by the California Labor Federation, AFL-CIO, January 5 to June 19, 1959;

8.     Excerpt regarding Assembly Bill 302 from 1959 <u>It's A Law</u>, prepared by the California Retailers Association;

9.     Excerpt regarding Assembly Bill 302 from "Summary of Bills Affecting the Department of Industrial Relations passed by the 1959 Legislature";

10.    All versions of Assembly Bill 303 (Gaffney-1959);

11.    Procedural history of Assembly Bill 303 from the 1959 <u>Assembly Final History</u>.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 28th day of April, 2005 at Woodland, California.

FILOMENA M. YEROSHEK

# Exhibit 4

CALIFORNIA LEGISLATURE, 1959 REGULAR (GENERAL) SESSION

# ASSEMBLY BILL                                    No. 302

Introduced by Messrs. Gaffney, Thomas, Busterud, Marks,
and Masterson

January 14, 1959

REFERRED TO COMMITTEE ON INDUSTRIAL RELATIONS

*An act to add Section 206.5 to the Labor Code and to add
Section 7110.1 to the Business and Professions Code, relat-
ing to the payment of wages.*

*The people of the State of California do enact as follows:*

1  SECTION 1.  Section 206.5 is added to the Labor Code, to
2  read:
3    206.5.  No employer shall require the execution of any re-
4  lease of any claim or right on account of wages due, or to
5  become due, or made as an advance on wages to be earned,
6  unless payment of such wages is made in cash or by certified
7  check. Any release required or executed in violation of the
8  provisions of this section shall be null and void and the viola-
9  tion of the provisions of this section shall be a misdemeanor.
10   SEC. 2.  Section 7110.1 is added to the Business and Pro-
11  fessions Code, to read:
12   7110.1.  The license of any contractor who requires the
13  execution of any release of any claim or right or causes the
14  execution of any such release in violation of Section 206.5 of
15  the Labor Code shall be revoked.

LEGISLATIVE COUNSEL'S DIGEST
A. B. 302 as introduced, Gaffney (Ind. R.). Payment of wages.
Adds Sec. 206.5, Lab. C., adds Sec. 7110.1, B. & P. C.
Makes it a misdemeanor for employer to require execution of a release of claim
for wages unless payment thereof is made and nullifies any such release violating
provision. Provides that if any contractor violates such provision it shall be ground
for revocation of his license.

O

LEGISLATIVE INTENT SERVICE     (800) 666-1917

1a

Exhibit 4
33

AMENDED IN ASSEMBLY MARCH 9, 1959

CALIFORNIA LEGISLATURE, 1959 REGULAR (GENERAL) SESSION

# ASSEMBLY BILL                    No. 302

Introduced by Messrs. Gaffney, Thomas, Busterud, Marks,
and Masterson

January 14, 1959

REFERRED TO COMMITTEE ON INDUSTRIAL RELATIONS

*An act to add Section 206.5 to the Labor Code and to add
Section 7110.1 to the Business and Professions Code, relat-
ing to the payment of wages.*

*The people of the State of California do enact as follows:*

1  SECTION 1. Section 206.5 is added to the Labor Code, to
2  read:
3  206.5. No employer shall require the execution of any re-
4  lease of any claim or right on account of wages due, or to
5  become due, or made as an advance on wages to be earned,
6  unless payment of such wages is made in cash or by certified
7  check. Any release required or executed in violation of the
8  provisions of this section shall be null and void and the viola-
9  tion of the provisions of this section shall be a misdemeanor.
10 SEC. 2. Section 7110.1 is added to the Business and Pro-
11 fessions Code, to read:
12 ~~7110.1. The license of any contractor who requires the~~
13 ~~execution of any release of any claim or right or causes the~~
14 ~~execution of any such release in violation of Section 206.5 of~~
15 ~~the Labor Code shall be revoked.~~
16 *7110.1. The requiring of an execution of release of any*
17 *claim or the causing of the execution of any such release in*
18 *violation of Section 206.5 of the Labor Code is a cause for dis-*
19 *ciplinary action.*

o

b

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 4
34

AMENDED IN SENATE MAY 21, 1959

AMENDED IN ASSEMBLY MARCH 9, 1959

CALIFORNIA LEGISLATURE, 1959 REGULAR (GENERAL) SESSION

# ASSEMBLY BILL                     No. 302

Introduced by Messrs. Gaffney, Thomas, Busterud, Marks,
and Masterson

January 14, 1959

REFERRED TO COMMITTEE ON INDUSTRIAL RELATIONS

*An act to add Section 206.5 to the Labor Code and to add
Section 7110.1 to the Business and Professions Code, relating to the payment of wages.*

*The people of the State of California do enact as follows:*

1  SECTION 1.  Section 206.5 is added to the Labor Code, to
2  read:
3    206.5.  No employer shall require the execution of any re-
4  lease of any claim or right on account of wages due, or to
5  become due, or made as an advance on wages to be earned,
6  unless payment of such wages ~~is made in cash or by certified~~
7  ~~check,~~ has been made. Any release required or executed in
8  violation of the provisions of this section shall be null and
9  void *as between the employer and the employee* and the viola-
10  tion of the provisions of this section shall be a misdemeanor.
11    SEC. 2.  Section 7110.1 is added to the Business and Pro-
12  fessions Code, to read:
13    7110.1.  The requiring of an execution of release of any
14  claim or the causing of the execution of any such release in
15  violation of Section 206.5 of the Labor Code is a cause for dis-
16  ciplinary action.

O

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 4
35

## CHAPTER 1066

*An act to add Section 206.5 to the Labor Code and to add Section 7110.1 to the Business and Professions Code, relating to the payment of wages.*

[Approved by Governor June 19, 1959. Filed with Secretary of State June 19, 1959.]

In effect
September
18, 1959

*The people of the State of California do enact as follows:*

SECTION 1.  Section 206.5 is added to the Labor Code, to read:

206.5.  No employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of such wages has been made. Any release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee and the violation of the provisions of this section shall be a misdemeanor.

Release of claim for wages

SEC. 2.  Section 7110.1 is added to the Business and Professions Code, to read:

7110.1.  The requiring of an execution of release of any claim or the causing of the execution of any such release in violation of Section 206.5 of the Labor Code is a cause for disciplinary action.

Disciplinary action

---

## CHAPTER 1067

*An act to add Article 3.5 (commencing with Section 1221) to Chapter 1, of Division 6, of the Military and Veterans Code, relating to the construction of halls, buildings and meeting places by veterans' memorial districts.*

[Approved by Governor June 19, 1959. Filed with Secretary of State June 19, 1959.]

In effect
September
18, 1959

*The people of the State of California do enact as follows:*

SECTION 1.  Article 3.5 (commencing with Section 1221) is added to Chapter 1, Division 6, of the Military and Veterans Code, to read:

Article 3.5.  Construction and Alteration of Halls, Buildings and Meeting Places

1221.  No contract for the construction or alteration of any hall, building or meeting place shall be let until such time as professional estimates of the cost of such construction or alteration have been submitted to, considered, and approved by a majority of the board at an official meeting.

Construction contracts: Estimates



LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 4
36

# Exhibit 5

### STATE OF CALIFORNIA
SAN FRANCISCO 3

## Inter-Departmental Communication

*To:*   Mr. Julian Beck
Legislative Secretary
Governor's Office
State Capitol
Sacramento, California

Date: May 28, 1959

Subject: Assembly Bill 302

*From:* Department of Industrial Relations
965 Mission Street

LEGISLATIVE INTENT SERVICE    (800) 666-1917

   Assembly Bill 302 adds Section 206.5 to the Labor Code providing that it will be a misdemeanor for an employer to require execution of a release of claim for wages, unless payment thereof is made. It further nullifies any release made in violation of such provision.

   It also adds Section 7110.1 to the Business and Professions Code providing for disciplinary action for the requiring on the part of an employer that such release of claim be executed in violation of the new Section 206.5.

   This bill is designed to provide remedy against abuses on the part of an employer who requires an employee to release his claim for wages as a condition of settlement of the claim for an amount less than the wages actually due. It will aid the Division of Labor Law Enforcement in securing full payment of unpaid wages in behalf of claimants even though they had previously waived part of what was justly due them.

   I recommend that this bill be signed by the Governor.

John F. Henning
Director

JFH:ga
cc:  Mr. Arywitz
   Mr. Corten

3

PE-1

Exhibit 5
37

BEST COPY AVAILABLE

**STATE OF CALIFORNIA**

## Office of Legislative Counsel

3021 STATE CAPITOL, SACRAMENTO 14
311 STATE BUILDING, LOS ANGELES 12

BERNARD CZEBLA
GEORGE H. MURPHY
PRINCIPAL DEPUTIES

STANLEY M. LOURIMORE
DEPUTY IN CHARGE
LOS ANGELES OFFICE

KENT L. DECHAMBEAU
RICHARD E. GARDELLA
J. GOULD
EDSEL W. HAWS
ROBERT G. HINSHAW
OWEN K. KUNS
ERNEST H. KUNZI
ANN M. MACKEY
RYAN M. POLSTRA
EDWARD K. PURCELL
RAY H. WHITAKER
ROSE WOODS
DEPUTIES

June 9, 1959

REPORT ON ASSEMBLY BILL NO. 302.          GAFFNEY.

SUMMARY:          Adds Sec. 206.5, Lab. C., adds Sec.
7113.1, B.&.P.C., re payment of wages.

Makes it a misdemeanor for an employer
to require the execution of any release of any
claim or right for wages unless payment thereof
has been made and nullifies, as between the
employer and employee, any such release violating
this provision. Specifies that if any contractor
violates such provision it shall be a cause for
disciplinary action.

FORM:    Approved.          TITLE:    Approved.

CONSTITUTIONALITY:    Approved.

Ralph N. Kleps
Legislative Counsel

*Richard T. Wilsdon*

By
Richard T. Wilsdon
Deputy Legislative Counsel

RTW:rc



LEGISLATIVE INTENT SERVICE    (800) 666-1917

PE-2

Exhibit 5
38

LEGISLATIVE INTENT SERVICE     (800) 666-1917

To:   Honorable Edmund G. Brown
      Governor of California

From: Office of the Attorney General

By   CHARLES A. BARRETT,
     Deputy Attorney General

Bill Report

A. B. No. 302

June 10 , 1959.

    We have examined the above bill and find no substantial
legal objection thereto.

*Charles A. Barrett*

PE-3

Exhibit 5
39

# CALIFORNIA LABOR FEDERATION, AFL-CIO

## C. J. HAGGERTY

EXECUTIVE SECRETARY-TREASURER  ·  LEGISLATIVE REPRESENTATIVE

SUITE 301-2, HOTEL SENATOR  ·  GIlbert 2-5081  ·  Sacramento 14, Calif.

June 11, 1959

Hon. Edmund G. Brown
Governor of California
State Capitol
Sacramento, California

Re: AB 302

My dear Governor:

AB 302, authored by Assemblyman Edward M. Gaffney, was introduced at the request of the California Labor Federation, AFL-CIO. The bill passed both houses of the Legislature without opposition.

As passed by the legislature, the bill adds Section 206.5 to the Labor Code and Section 7110.1 to the Business and Professions Code relating to the payment of wages.

Section 206.5 of the Labor Code would render null and void any releases which an employer required to be executed as a condition precedent to the receipt of the amount earned by the individual unless such payment was in fact made.

Section 7110.1, added to the Business and Professions Code, provides that any licensed contractor who requires the execution of such releases, in addition to being subject to a possible misdemeanor charge under the Labor Code Section, would also possibly be subject to disciplinary action in so far as his license is concerned.

Testimony before legislative committees developed the fact that there exists a rather widespread use of general release forms, particularly in the building industry in Southern California, whereby an individual, as a condition of receiving his payment, is required to forego all his defenses and agree that the payment is full and complete.

Not infrequently the payments were made by bad checks, and accordingly the labor commissioner's office was without power to process the case because of the signing of the release agreement.

PE-4

LEGISLATIVE INTENT SERVICE     (800) 666-1917

Exhibit 5
40

- 2 -

To: Governor Edmund G. Brown
Re: AB 302
June 11, 1959



The bill is intended to correct this condition, but at the same time to permit payment by check so long as it is honored.

I accordingly recommend your favorable action on this measure.

Very truly yours,

C. J. Haggerty,
Executive Secretary-Treasurer

CJH:vch

LEGISLATIVE INTENT SERVICE    (800) 666-1917

PE-5

Exhibit 5
41

# Assembly
# California Legislature

### EDWARD M. GAFFNEY
MEMBER OF ASSEMBLY, TWENTY-FOURTH DISTRICT

VICE CHAIRMAN
COMMITTEE ON TRANSPORTATION AND COMMERCE

LEGISLATIVE INTENT SERVICE    (800) 666-1917

June 11, 1959

Honorable Edmund G. Brown
Governor of California
State Capitol
Sacramento, California

Dear Governor:

Will you kindly affix your signature to Assembly Bill No. 302.
This bill was given to me by the American Federation of Labor
to meet previous conditions of non-payment of wages by the
devious methods of certain unscrupulous employers to require
a release from an employee on termination of employment and
paying the man with a rubber check. The execution of the
release precludes further claim through the Labor Council.

The bill makes it a misdemeanor for an employer to require
the execution of any release of any claim or right for wages
unless payment thereof has been made and nullifies, as between
the employer and employee, any such release violating this
provision. Specifies that if any contractor violates such
provision it shall be a cause for disciplinary action.

Thanking you for your signature which will greatly help
remedy a grave injustice, I remain, with all good personal
wishes,

Sincerely,

Ed

EDWARD M. GAFFNEY

EMG:gf

PE 6

Exhibit 5
42

STATE OF CALIFORNIA

SACRAMENTO 14

BEST COPY
AVAILABLE

## Inter-Departmental Communication

To:
Mr. Julian Beck
Legislative Secretary
Governor's Office
State Capitol
Sacramento, California

File No.

Date: June 12, 1959

Subject: AB 302-Before Governor
for signature.

From:    Department of Professional and Vocational Standards

This bill amends the Labor Code and the Business and
Professions Code to prohibit employers from requiring
releases of claims or rights to wages due, or to become
due, or made as advances on wages to be earned, unless
such wages have been paid in cash or by certified check.
Releases required or obtained in violation of the provision
would be null and void.  Violation of the provision would
also be a misdemeanor and, if committed by a contractor
licensed by the Contractors' State License Board, a basis
for revocation of his license.

Neither the Contractors' State License Board nor the
Registrar of Contractors has taken any position on the
bill, and we have no objection to its being signed.

VSD:ob

VINCENT S. DALSIMER
DIRECTOR

LEGISLATIVE INTENT SERVICE    (800) 666-1917

PE-7

Exhibit 5
43

**BILL MEMORANDUM**

BEST COPY
AVAILABLE

Date: June 16, 1959

*To:* GOVERNOR BROWN

*From:* Julian Beck

Assembly BILL No. 302 By Gaffney, et al

VOTE: Senate 32 - 0

Assembly Unanimous

Assembly concurred in Senate amendment 25 - 0

Assembly Bill 302 adds Section 206.5 to the Labor Code providing that it will be a misdemeanor for an employer to require execution of a release or claim for wages unless payment thereof is made. It further nullifies any release made in violation of such provision. The bill provides further for disciplinary action for the requiring on the part of an employer that such release of claim be executed in violation of the new section.

This bill is designed to provide remedy against abuses on the part of an employer who requires an employee to release his claim for wages as a conditional settlement of his claim for an amount less than the wages actually due.

Passed by unanimous consent.

Sponsored by the Department of Industrial Relations, the Western Federation, AFL-CIO, neither the State Finance Board nor the Registrar of ... has taken any position on the bill, and ... the Department of Professional and Vocational ... has no objection to it being signed.

Recommendation: Approve (Outline)

PG-8

Exhibit 5
44

LEGISLATIVE INTENT SERVICE     (800) 666-1917

# Exhibit 6

# SUMMARY DIGEST

of

# STATUTES ENACTED

and

Proposed Constitutional Amendments
Submitted to the Electors
Including
Table of Sections Affected

## California Legislature
1959 Regular Session



J. A. Beek
*Secretary of the Senate*

Arthur A. Ohnimus
*Chief Clerk of the Assembly*

*Compiled by*
Ralph N. Kleps
Legislative Counsel



LEGISLATIVE INTENT SERVICE      (800) 666-1917

Exhibit 6
45

130        1959 REGULAR SESSION SUMMARY DIGEST

A.B. 286 (Ch. 493).  MASTERSON.  Adds Art. 2.5 (commencing at Sec. 4470), Ch. 4. Pt. 2. Div. 5, H. & S. C., re fishing in water supplies and recreational uses in the surrounding area.

Authorizes board of supervisors of county wherein a reservoir or lake owned or controlled by a governmental agency (and used to supply water for human consumption) is located, to request that the water and surrounding area be open to fishing and other recreational uses, respectively.

Requires the governmental agency to make an estimate of cost of preparing coordinated plan therefor, and if board of supervisors deposits the amount of such estimate (not exceeding $2,500), requires the governmental agency to proceed with and complete such plan and apply to the Department of Public Health for an amendment to its water supply permit to permit the uses under the plan.

Requires the governmental agency, upon receipt of amended permit, to either open the water and surrounding area or submit the matter to the vote of its constituents and open the water and surrounding area if the majority of the voters approve. Authorizes governmental agency to submit bond issue to its constituents if necessary to pay for capital improvements included in co-ordinated plan.

Provides for the regulation of the use of the water in surrounding area and provides for payment of development and operation, as far as possible, from fees charged for use of facilities.

A.B. 288 (Ch. 337).  HAWKINS (Departmental).  Amends Secs. 4501, 4552, 4553, W. & I. C., re medical care for recipients of aid to the disabled.

Extends coverage of medical care program for public assistance recipients to recipients of aid to the disabled, and provides for transfer of $6 per recipient per month to the Medical Care Premium Deposit Fund as premium deposits on behalf of such recipients.

Requires that transfers made by Controller from Social Welfare Federal Fund to Medical Care Premium Deposit Fund be equal to $3 for each adult recipient and $1.50 for each child recipient for whom federal funds are received.

A.B. 290 (Ch. 38).  BIDDICK.  Adds Sec. 6011, Elec. C., re misrepresentation in election campaigns.

Prohibits a candidate, or a committee in his behalf, from representing that he has the support of the state or county central committee of the opposing party, when such is not the case.

Authorizes member of state or county central committee to bring action in superior court to enjoin such misrepresentation.

A.B. 292 (Ch. 682).  CONRAD.  Amends Sec. 9483, Elec. C., re election services to cities and districts.

Permits any county, instead of only counties having registrars of voters, to perform election services for cities and districts upon request, and eliminates requirement that a city reserve funds in advance to pay for such services.

A.B. 293 (Ch. 203).  CONRAD.  Amends Sec. 11052, Elec. C., re municipal recall petitions.

Provides that statement on recall petitions setting forth the grounds on which the recall is sought shall not exceed 200 words in length.

Makes other technical changes.

A.B. 294 (Ch. 498).  CONRAD.  Amends various secs., Elec. C., re tabulation of ballots.

Changes references to tally lists to "tally sheets." Eliminates requirement that names of candidates and measures appear in same chronological order on tally sheets as they appear on ballot.

Makes other technical and clarifying changes.

A.B. 302 (Ch. 1066).  GAFFNEY.  Adds Sec. 206.5, Lab. C., adds Sec. 7110.1, B. & P. C., re payment of wages.

Makes it a misdemeanor for employer to require execution of release of any claim or right for wages unless payment thereof has been made and nullifies, as between employer and employee, any such release violating this provision. Specifies that if contractor violates such provision it shall be a cause for disciplinary action.



LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 6
46

# Exhibit 7



# TABLE OF CONTENTS

**Vol. 34    September-October, 1959    No. 5**

Page

Continuing Education—Probating California Estates .................... 572

President's Message, by Burnham Enersen of San Francisco ............ 577

SELECTED 1959 CODE LEGISLATION ..................................... 581

  Preface, by Adrian Kragen of Berkeley, Chairman of the Committee on Continuing Education

CODES: Business and Professions, 583; Civil, 586; Civil Procedure, 623; Corporations, 678; Financial, 687; Government, 687; Health & Safety, 700; Insurance, 702; Labor, 704; Penal, 710; Probate, 728; Revenue & Taxation, 757; Vehicle, 761; Welfare & Institutions, 764; Government Fee Tables, 765.

Index to Table of Code Sections Discussed .. 770

For Tax Evasion Dual Prosecutions, by Harry Graham Balter of Los Angeles .................................................... 777

Tax News Small Corporations, by Baxter K. Richardson of Fresno .... 790

Press Bar Award:

  Presentation, by Justice Murray Draper of the First District Court of Appeal

  Acceptance, by James Crenshaw of the Los Angeles Herald Express .. 798

Report of the President for 1958 1959, by Graham L. Sterling of Los Angeles .................................................... 800

Work of the Board, by the Secretary of the State Bar ............. 803

State Bar Delegates, by Leon W. Scales of San Diego ............. 820

Conference of Barristers, by Robert W. Merrill of San Francisco ... 845

Findings of Fact, by Harry W. Horton of El Centro ............... 847

Rules 2 and 3a—Solicitation .................................... 850

Rulere News Releases............................................ 857

Lawyer Reference Services ...................................... 859

California Supreme Court Sits in Monterey, by George R. Walker, President of the Monterey County Bar Association .............. 860

The State Bar Idea, by Corinne L. Gilb of Berkeley ............. 862

Erskine Mayo Ross, by J. Edward Johnson of San Francisco ........ 866

Forum:

  Babying Prosecutors, by Henry G. Bodkin of Los Angeles ........ 873

  Better Bar Exams, by Superior Judge Edward T. Bishop of Los Angeles 878

Miscellaneous: New Laws Available, 769; Unauthorized Practice, 775; Discipline Imposed, 802; Resignation, 802; New Claims Periods, 861; Tax Proceedings, 880. .......................................... 880

576

# President's Message

By Burnham Enersen of San Francisco,
President of the State Bar of California

As these few lines are being written the 1959 Annual Meeting of the State Bar has just drawn to a close in San Francisco. Almost 2500 lawyers registered for the meeting—a new high for annual meetings of the State Bar in Northern California. The expressions of those in attendance indicate that the convention has been one of the most successful in recent years.

Successful conventions do not occur by accident or happenstance. They are the result of much careful planning and hard work on the part of many individuals, committees and organizations. At its closing session the Conference of State Bar Delegates adopted an appropriate resolution expressing appreciation for the work of all those who had contributed to the planning and organization of the meeting. These sentiments were echoed by a resolution adopted on the floor of the convention at its last session and shortly thereafter by a resolution of the Board of Governors.

It is impossible to name all of those who have been instru-

577



Exhibit 7
47

## Selected 1959
# Code Legislation

### PREFACE

This is the third time that the Department of Continuing Education of the Bar of the University of California Extension has prepared a review of selected code legislation for the State Bar's Committee on Continuing Education of the Bar. It is printed again in the STATE BAR JOURNAL in order to give the widest direct circulation among California's lawyers.

Of the 2195 chapters signed by the Governor, the measures reviewed here were picked because they seem to have the most value to the practicing bar. The discussions include: (1) the pertinent text of the new or amended code section; (2) the case law or legislative background, if obtainable; and (3) the effect.

Many of the chapters were not known until the end of July and the preparation of the discussions had to meet an early September deadline. While every care was taken to ensure legal accuracy, the research and discussions could not be exhaustive or too detailed. Nonetheless, what is set forth should assist lawyers in understanding the important legislative changes to the codes. Even though sponsored by the State Bar Committee, it should be made clear that this review is not, nor does it purport to be, an official statement of the State Bar, either with respect to changes in law sponsored by the State Bar or other legislation.

The following individuals, who fall into four categories, gave invaluable help:

1. Those who furnished legislative materials and advice:

Coscoe O. Farley, Legislative Representative, State Bar; John A. Bohn, Counsel to the Senate Judiciary Committee; William Biddick, Jr., Assemblyman, Chairman, Assembly Judiciary Committee; Jan Stevens, Counsel to the Assembly Judiciary Committee; Beatrice Graybill, Secretary to the Assembly Judiciary Committee; Hale Champion, Press Secretary, Office of the Governor; Ralph N. Kleps, Legislative Counsel, State of California; Albert N. Knapp, Supervisor, Legislative Bill Room; Hazen L. Matthews, Executive Vice President, California Land Title Association; C. J. Haggerty, Secretary-Treasurer, California Labor Federation; and Neill Davis, Executive Vice President, California Savings and Loan League.

581

to accept appointment by Governor Brown as a Superior Judge in Los Angeles County. Mr. Files has been an invaluable Board member during the two years he has served, and he will be sorely missed.

In addition to the six new members, the Board of Governors consists of four members who, in addition to Mr. Mattson, will be serving their third and final year and five members who will be serving their second year. The four members who will be serving their final year are Vice-President and Treasurer James B. Boyle of Pasadena, Vice-Presidents John B. Lonergan of San Bernardino and Edward W. Schramm of Santa Barbara, and the president. The five members who will be serving their second year are Anthony A. Cardozo of Modesto, Alvin M. Cibula of Redding, Marlin W. Haley of Hayward, Harry W. Horton of El Centro, and James C. Sheppard of Los Angeles.

On behalf of all of the members of the Board, I assure the nearly 20,000 lawyers who comprise the State Bar of California that we will do our very best to manage and direct the affairs of the State Bar in a manner which will be in the best interest of the profession and public.

September 26, 1959.

**NEW GOVERNORS:** Chief Justice Phil S. Gibson of the Supreme Court of California is administering the oath of office to new members of the Board of Governors. From left to right: Forrest E. Macomber of Stockton, John S. Frazer of Los Angeles, Duncan Oneal of San Jose, Marcus Mattson of Los Angeles (to replace Superior Judge Gordon L. Files of Los Angeles), Theodore R. Meyer of San Francisco, J. E. Simpson of Los Angeles.

Exhibit 7
48

582    JOURNAL OF THE STATE BAR OF CALIFORNIA

2. Those who commented upon the discussion in manuscript form and made highly useful suggestions:

Paul A. Peterson, San Diego Bar; B. E. Witkin, Berkeley Bar; Terry L. Baum, Deputy Legislative Counsel, State of California; Mrs. Frances J. Tenney, Librarian, University of California School of Law at Berkeley.

3. Those faculty members of the University of California School of Law at Berkeley who provided helpful criticism:

Edward L. Barrett, Jr., Rex A. Collings, Jr., Geoffrey C. Hazard, Jr., Richard W. Jennings and David W. Louisell.

4. Those who did the actual research and writing:

Howard A. Siegel of the San Francisco Bar and Thomas J. Hammer, Jr., third-year law student at University of California School of Law supervised the project.

John D. Hussey, Cecil M. Hunt, Albert J. Fink, Venetta Skeepetos, Donald J. Morgan, Donald L. Reidhaar of the University of California at Berkeley; Maxwell M. Freeman of Stanford University, and Grant E. Propper of U.C.L.A. All are third-year law students.

The typing and checking were in the capable hands of Miss Joan Svensgaard.

Special thanks go to Mr. Berton J. Ballard, *Editor of the STATE BAR JOURNAL,* for his skilled editorial aid.

Finally, the basic conception and execution of this work was under the always active and efficient supervision of the Administrator of the Continuing Education of the Bar Program, Felix F. Stumpf, who kept a tight rein on the progress of the work and made it possible in its present form. The Committee wishes to express its appreciation to Felix Stumpf for the excellent result which he has achieved in this and other facets of the Continuing Education program.

ADRIAN A. KRAGEN, *Chairman*
*Committee on Continuing Education
of the Bar*

---

1959 LEGISLATION — BUSINESS & PROFESSIONS CODE    583

# Business and Professions Code

## § 2144 (amended): Medical aid in emergencies: No liability if in good faith.

A.B. 2873; Stats. 1959, ch. 1507.

2144. Nothing in this chapter prohibits service in the case of emergency, or the domestic administration of family remedies, nor does this chapter apply to any commissioned medical officer in the United States Army, Navy, or Marine hospital, or public health service, in the discharge of his official duties, nor to any licensed dentist when engaged exclusively in the practice of dentistry.

*No person licensed under this chapter, who in good faith, renders emergency care at the scene of the emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care.*

DISCUSSION

Medical men have an ethical, if not legal, obligation to aid the imperiled in emergency situations (Prosser, *Torts* 184 (1955)). However, the possibility of liability frequently deters them from rendering aid or the type of aid which, in good faith, they believe necessary. Often in an emergency a specialist assists in matters unfamiliar to him and unrelated to his area of expertise. Nevertheless, an unwitting jury may hold him to the standard of care which should be exercised by a general practitioner or even a specialist in the field.

This legislation relieves persons licensed under the Medical Practice Act (Bus. & Prof. Code §§ 2000 et seq.) from civil liability for good faith acts or omissions in rendering emergency care at the scene of an emergency.

## §§ 6850-6956 (sections amended, added, repealed): Regulation of collection agencies.

S.B. 1285; Stats. 1959, ch. 2159.

*[Because of their length these sections are not reproduced.]*

DISCUSSION

This legislation provides that collection agency licensing law be administered by the Department of Professional and Vocational Standards rather than the Secretary of State. The Department is given jurisdiction over the new Collection Agency Licensing Bureau which has been substituted for the State Collection Agency Board. In addition, the legislation requires a licensee's



706        JOURNAL OF THE STATE BAR OF CALIFORNIA

1959 LEGISLATION — LABOR CODE        705

Subcommittee of Assembly Interim Committee. Reports, 1959, Vol. 20, No. 6 (hereinafter referred to as the "Committee Report"), pp. 11 and 14). Further, many people either erroneously believe that most public liability insurance affords self-protection from losses caused by an uninsured motorist or they do not know that such protection is available (Committee Report, pp. 14 and 15). Increased use of such coverage would lessen personal losses from accidents with uninsured motorists.

The present legislation therefore requires all automobile liability insurance policies sold or delivered in California to provide financial protection to the insured against bodily injury caused by an uninsured motorist. This coverage may be waived only by a supplemental agreement between the insurer and the insured. The protection extends to the named insured, his spouse, and their relatives while residents of the same household while occupants of a motor vehicle or otherwise, and to any person in, upon, entering into or alighting from an insured vehicle, provided that the vehicle is used by the named insured or with his express or implied consent. The coverage limits must be at least equal to the financial responsibility requirements set out in Veh. Code §§ 16509 to 16451.

An insured is entitled to recover under this section is to be reimbursed without his releasing any right under any other insurance coverage applicable to the accident. Any insurer paying a claim under these provisions is entitled to be subrogated to the rights of the insured.

# Labor Code

§ 56 (amended); §§ 1410-1432 (new); Fair Employment Practices.

A.B. 91; Stats. 1959, ch. 121.

[Because of their length these sections are not reproduced.]

DISCUSSION

The Fair Employment Practice Act was adopted by the Legislature as an instrument of public policy for securing to all persons the opportunity to obtain employment without regard to race, religious creed, color, national origin, or ancestry. It applies to employers of five or more persons, labor organizations, employment agencies, and to the State or any of its political or civil subdivisions and cities. The Act does not cover social, fraternal, charitable, educational, or religious associations, non-profit corporations, or employers of agricultural and domestic workers.

It is an unfair employment practice within the meaning of this

Act for an employer to refuse to hire or to discharge from employment any person because of the foregoing reasons, or to discriminate against such person in matters of compensation, terms, conditions or privileges of employment. An employer may not use an application form or make any inquiry of the prospective employee which directly or indirectly expresses a limitation or discrimination based on race, religious creed, color, national origin, or ancestry.

This bill establishes a Fair Employment Practice Commission to administer the provisions of the Act. Any person aggrieved by an alleged unlawful employment practice may file a verified complaint with the Commission.

Following investigation, the Commission will attempt to correct the objectionable practice by conference and conciliation. If this procedure fails, or if the commissioner decides otherwise, a written accusation will be issued, requiring the person to appear at a hearing to be conducted in accordance with the Administrative Procedure Act, Chapter 5, and other provisions of this act.

A number of states have passed similar legislation. The first act was passed in New York in 1945. The following articles discuss the effect and application of these statutes:

Cases Are People. An Interpretation of the Pennsylvania Fair Employment Law, 62 Dick. L. Rev. 239 (1958); Civil Rights: Minnesota Fair Employment, 42 Minn. L. Rev. 1163 (1958); The Michigan State Fair Employment Practices Act, 34 U. Det. L. J. 337 (1956); Pennsylvania Fair Employment Practices Act, 17 U. Pitt. L. Rev. 438 (1956); Review of State FEPC Laws, 9 Lab. L. J. 478 (1958).

§ 206.5 (new); Business and Professions Code § 7110.1 (new); Requiring or causing releases of an employee's wage claims.

A.B. 302; Stats. 1959, ch. 1066.

206.5. No employer shall require the execution of any release of any claim or right on account of wages due, unless payment of such wages has been made, or made as an advance on wages to be earned, unless payment of such wages has been made. Any release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee and the violation of the provisions of this section shall be a misdemeanor.

7110.1. The requiring of an execution of release of any claim or the causing of the execution of any such release in violation of Section 206.5 of the Labor Code is a cause for disciplinary action.

DISCUSSION

Labor Code § 206.5 provides that an employer's release of a claim or right "on account of wages due, or to become due, or

made as an advance on wages to be earned" is null and void unless payment has been made. If read literally, "or made" would be a contradiction in terms with "unless payment has been made." Therefore, it seems "or made" must be read as "or to be made." This interpretation means simply that a claim for an advance on wages is one of the claims protected by the statute.

The final clause provides, "the violation of the provisions of this section shall be a misdemeanor." However, it is unclear from the terms of the statute what constitutes a violation. Since the statute affirmatively commands only that no employer shall require a release, it appears that only the requiring, and not the mere execution, constitutes a violation. Such support because if mere execution was a violation, the releasing employee as well as the employer would seem to be guilty of a misdemeanor; and clearly the statute is designed to protect employees.

Business and Professions Code § 7110.1 provides that contractors (as defined in § 7062) requiring or causing the execution of a release in violation of Lab. Code § 206.5 are subject to disciplinary action. The statute is loosely worded but it seems quite evident that the provision, "requiring of an execution of release causing" is limited (just as the statute specifically so limits of any claim" causing) to any claim as prescribed by Lab. Code § 206.5.

As originally introduced, the bill required license revocation for violators. This may be an indication that the legislature contemplated a fairly stern sanction in providing for disciplinary action in the final version.

## § 220 (new): Payment of wages.

### S.B. 1365; Stats. 1959, ch. 1939.

*229. Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement.*

### DISCUSSION

Labor Code §§ 200-227 regulate the payment of wages in general occupations. These regulations cover the time, manner and place of payment, and make unlawful the wilful refusal to pay wages. Under § 218 any wage claimant may sue for any wages or penalty due him under any of these provisions. The new section provides that any such action may be maintained regardless of any private agreement to arbitrate, but the section does not apply if the wage claim involves a dispute regarding the inter-

pretation or application of a collective bargaining agreement containing an arbitration agreement. Present case law requires either party to a collective bargaining agreement to arbitrate before litigation if the agreement provides that a dispute may be referred to arbitration (*Hagin v. Pacific Gas and Elect. Co.*, 152 Cal.App.2d 93, 96, 312 P.2d 356, 358 (1957).).

## §§ 3601, 4453, 4455, 4460, 4553, 4554, 4600, 4601, 4650, 4656, 4658, 4659, 4701, 4702 (amended); §§ 4553.1, 4555.5 (new): Workmen's compensation: Co-employee's liability to injured or deceased employee.

### A.B. 1015; Stats. 1959, ch. 1189.

*[Because of their length these sections are not reproduced.]*

### DISCUSSION

While the Workmen's Compensation Act is expressly made an injured or deceased employee's exclusive remedy against his employer (Lab. Code § 3601(a)), the Act previously was silent with respect to actions against co-employees. In *Singleton v. Bonnesen*, 131 Cal.App.2d 327, 380 P.2d 481 (1955), the court upheld an injured employee's right to sue a negligent co-employee. The amendment to § 3601(a) restricts the rule of *Singleton v. Bonnesen*, above. Workmen's compensation is now the exclusive remedy of an employee injured or killed by the negligent act of a co-employee acting within the scope of his employment (Lab. Code § 3601(a)). An employee, however, may sue a co-employee for injuries or death proximately caused by 1) a wilful and unprovoked physical act of aggression, 2) intoxication, or 3) an act in reckless disregard of another's safety and a calculated willingness to permit such injury or death (Lab. Code § 3601(a)). This right to sue a co-employee is in addition to the right to compensation against the employer. The employer is not directly or indirectly liable for damages incurred by a co-employee under § 3601(a). Nor may the employer recover from the tortious co-employee unless the injured employee or his dependents recover a civil judgment under § 3601(a).

Even though the tortious act does not permit an action under § 3601(a), it nevertheless may be the basis for a finding of serious and wilful misconduct under Lab. Code §§ 4553 and 4553.1 (Lab. Code § 3601(b)).

New § 4553.1 sets forth the findings which the Commission must make to support a holding of serious and wilful misconduct by an employer for violation of a safety order.

In addition to medical expenses, the employee is now entitled to reimbursement for medical testimony reasonably necessary



LEGISLATIVE INTENT SERVICE     (800) 666-1917

Exhibit 7
51

# Exhibit 8



CALIFORNIA

1959

Legislative Report

United Steelworkers of America



LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 8
52

CALIFORNIA STATE LIBRARY
CALIFORNIA SECTION

# UNITED STEELWORKERS OF AMERICA
# LEGISLATIVE REPORT

**Legislative-Education Committee, District 38, Charles J. Smith, Director**

106

# INDEX

I. FORWARD

Message—President David J. McDonald
Message—District Director, Charles J. Smith
Introduction—Coordinator L-E Committee,
    Thomas J. Consiglio

II. CIVIL RIGHTS

A.B.      7, Marriage Licenses
A.B.     91, S.B. 477, F.E.P.C.
A.B.   890, Discrimination in Housing
A.B.   594, Unruh Civil Rights Act

III. SOCIAL INSURANCE

A.B.   416, Wage Reporting
A.B.   494, Unemployment Disability
A.B. 1015, Workmen's Compensation and Disability
A.B. 1543, Supplemental Unemployment Benefits
A.B.   590, Unemployment Insurance
S.B.   945, Extension of 26 to 39 weeks
A.B.   476, Pamphlets printed in Spanish
S.B.   136, Partially-employed fishermen
A.B. 2655, Compulsory retirement
A.B.   213, Subsequent injuries
A.B.   770, Inclusion of Chiropodists
A.B. 1578, Death in family or unlawfully
             detained eligibility

IV. LABOR

A.B.   419, Jurisdictional disputes
S.B.   209, Internal conduct of unions
A.B.   302, Claim for wages
A.B. 1153, Wage Attachment
S.B.   673, Disabled workers
S.B. 1365, Claims for wages
             Pay Raise State Employees
A.B. 1223, Minimum wage

SOCIAL WELFARE

S.B.   867, Increase for pensioners
A.B.   123, Increase for pensioners
A.B. 1535, Increase for needy blind
A.B. 1536, Increase for partially self-supporting blind
A.B.   852, Relative responsibility
A.B.   288, Aid to needy disabled
             Job placement for older workers

VI. EDUCATION

A.B. 1000, A.D.A. allocation
A.B. 1008, Teachers pay
A.B. 1084, Retired teachers
A.B. 2074, Bar examination
A.B.   285, Aid to Veterans Children

VII. ELECTIONS

A.B.   350, Electronic Voting Machines
A.B. 2520, Polls
A.C.A. 15, 4 year terms for Assemblymen
S.B.   342, New precincts
A.B. 1589, Election boards
A.B.   118, End of Cross Filing
A.B.   195, Re-registration
A.B. 1456, Vote by mail

VIII. MOTOR VEHICLES

A.B.     27, Speed limit
S.B.   686, Drivers license
A.B.   273, Spotlights
A.B. 2528, Auto Insurance fraud
A.D. 2083, Pedestrian Right-of-way
A.B. 2086, Lowering body of auto

XI. TAXES

A.B. 1177, Income tax
A.B. 1172, Cigarette tax
A.B. 1174, Severance tax
A.B. 1175, Bank & Corporation tax
A.B. 1173, Horse racing tax
A.B. 1176, Inheritance tax
A.B. 1171, Beer tax
A.B. 1170, Insurance tax

X. HIGHWAYS

S.B.   480, 20 year highway plan

XI. WATER

S.B. 1106, Burns-Porter Act

XII. INSTALLMENT RACKETS

A.B.   500, Curb of installment rackets

XIII. BUY AMERICA ACT

A.B.   335, Defeat of repeal

XIV. POSSESSORY INTEREST

A.B.   487, Defeat of possessory interest taxes

XV. GASOLINE TAXES

A.B. 2680, Defeat of formula change

XVI. APPOINTMENTS BY GOVERNOR

LEGISLATIVE INTENT SERVICE     (800) 666-1917

— 1 —

Exhibit 8
53

# LABOR LEGISLATION



**Assemblyman Allen Miller, chairman of Rules Committee, authored A.B. 419, labor bill in lower house.**

### A.B. 419

THE GOVERNOR'S platform on Labor, as he outlined it in his campaign speeches, was contained in two bills submitted to the legislature. In the Assembly A.B. 419 was introduced by Allen Miller (D-San Fernando) and in the Senate, S.B. 209 authored by Stephen Teale (D-West Point).

A.B. 419 would establish machinery for union representation and give intra-state employees bargaining rights through union elections, much the same as the Taft-Hartley Act covers inter-state workers.

The bill also outlined a formula for the settlement of jurisdictional disputes in intra-state commerce.

The most important feature for organized labor in the bill, one they have sought for years, was the repeal of the injunctive provisions of the present anti-jurisdictional strike law.

The strongest opposition to the bill came from the "farm belt" and numerous attempts were made in the Assembly to amend the bill and exclude agricultural workers. Assemblyman Miller was successful in defeating these amendments in the lower house and passed the bill to the Senate, where it was assigned to the Senate Labor Committee.

The lobbyist in Sacramento, for the numerous farm groups, being unsuccessful in amending the bill in the Assembly, "pushed the panic button". They staged an all out mobilization effort against the bill.

Over 1,000 representatives of farm and employer interests, the largest in years, descended on the Capitol for the Senate Labor Committee hearing on A.B. 419. They had been so "brain-washed", with misinformation and propaganda that in all their testimony and even in private conversations, their only concept of the bill was that it would force compulsory unionization of all farm workers.

The majority of Senators on the Senate Labor Committee, being from "Cow Counties" heeded the pressure of the farm groups and voted to table the bill, thereby killing it for this session.

### S.B. 209
# THE LABOR BILL

The labor bill in the Senate covered the internal conduct of trade union affairs and the related activities of employer groups.

The measure provided, among other things, for secret balloting, recall of union officials for mis-conduct, regulation of labor union trusteeships, and the filing of annual labor organization reports with the State.

Labor officials would be required to report any stocks held in a company with which their unions had dealings. Unions would be prohibited from making loans to their officers except strike, sickness and welfare plan benefits or loans pursuant to a bona fide credit union program.

No employer or union official could solicit or accept "influence" gifts or bribes. Management would be required to make reports to the Industrial Relations Department on payments to labor consultants for the purpose of influencing employees in collective bargaining. Such advisers and firms would also be required to file report of their receipts and disbursements.

Most of the provisions of the bill are "old hat" to 95% of the labor unions in California as their by-laws and constitutions are far more strict in regulating their local unions.

Some labor leaders in California, considered A.B. 419 and S.B. 209 as a "package" and with the defeat of A.B. 419 contended the Governor should drop S.B. 209.

The Governor disagreed and intensified his effort for the successful passage of S.B. 209.

The Assembly Industrial Relations Committee amended the bill to include the repeal of the jurisdictional strike provision which had been contained in the defeated A.B. 419, and sent the bill to the Ways and Means Committee.

The Governor objected to the committee's amendment to S.B. 209 and stated, "I think our jurisdiction

— 14 —

LEGISLATIVE INTENT SERVICE     (800) 666-1917

Exhibit 8
54

strike law is anti-labor, I don't like it, but I think the question should be handled separately." He further commented he would support attempts to remove the amendment.

The Assembly Ways and Means Committee, removed the amendment from the bill and sent it to the floor of the Assembly.

A top spokesman for labor, incensed with the Governor's statement and the procedure used by the committee to kill the amendment, started a campaign to kill the bill.

All segments of organized labor did not support his hostile activities, which to many observers appeared more as a "personal spat", based on hurt feelings, than a major issue on which labor should take a stand.

Among the many unions supporting S.B. 209, were the United Steelworkers. In a telegram to the majority floor leader, which was read during the debate of the bill, District Director, Charles J. Smith stated. "Representatives of the United Steelworkers of America are fully aware of their responsibilities to the members . . . who make the organization possible and who have included the democratic procedures provided in S.B. 209 in their own constitution."

The wire further stated although there was no need for legislation to insure rights already enjoyed by the Steelworkers — "we fully recognize that some organizations do not provide for a democratic expression from the membership" — he concluded his message by urging passage of S.B. 209.

Republicans, who had taken a back seat all session, noted the division. They took advantage of the situation and gleefully jumped into the fray.

A few hours before adjournment, the "strange bedfellows" which defeated S.B. 209, included the most reactionary Republican legislators in the state who consistently have voted against labor for years.

# MINIMUM WAGE
## A.B. 1223

The first major defeat suffered by the new administration and in reality by all citizens in the State of California was the loss of the $1.25 an hour Minimum Wage bill.

Under the present law, California's minimum wage of $1.00 an hour, applies only to women and children.

At the request of the Governor, Assemblyman Augustus Hawkins (D-L.A.) introduced A.B. 1223, which would set the minimum wage for all workers at $1.25 an hour.

The bill withstood an intense three hours of hot debate in the Assembly Industrial Relations Committee. In order to get the bill out of Committee the author, (Hawkins) reluctantly accepted amendments to lower the rate for agricultural workers to $1.00 per hour.

Before A.B. 1223 could reach the floor of the Assembly for a vote, it also had to clear the Assembly Ways and Means Committee. This Committee further amended the bill by completely eliminating agricultural wkers from coverage in the bill.

Hawkins was successful in defeating the amendment with a substitute amendment but could only gather enough votes to keep agriculture in the bill with a 90 cent an hour minimum.

A "Special Order of Business" was set to hear A.B.

1234 and the additional 6 sets of amendments, when the bill reached the floor or the Assembly.

Despite the delaying tactics by some of the vociferous Republicans, Hawkins, a veteran legislator, single handedly steered the Assembly floor action in such a masterful fashion, that all the crippling amendments were tabled. The bill passed out of the Assembly on a 44 to 35 vote and went to the Senate. As a majority of the members in the Senate are from "Cow Counties" the opposition become more intense.

Spokesmen for the California Farm Bureau, Associated Farmers of California, the restaurant industry, hotel and motel industry and the cleaning and dying industry, opposed the bill. The farm opposition pictured agriculture as a sick industry which would go under if subjected to higher production costs.

A standing room only crowd of over 500 persons attended the Minimum Wage bill hearing before the Senate Labor Committee. Before the hearing over a hundred farm workers paraded around the Capitol and in front of the Governor's office with placards.

In his testimony before the Committee, Hawkins stated, "it is the farm workers who need a minimum wage most of all. Perhaps in Mississippi or Louisiana people can live on 90 cents an hour, but not in California".

Following a 3½ hour debate which included boos and applause, the Senate Labor Committee bowed to the largest and strongest lobby in the State, the "Farm Belt", and sent the bill to an Interim Committee for a 2 year study. Only Senators Richard Richards (D-L.A.), Alan Short (D-Stockton) and Stephen Teale (D-Calaveras County) had their vote recorded as "No" for sending the bill to an interim study. Hawkins protested the committee's action stating, "you have been studying this since 1935!"

As a result of the Senate Labor Committee's action, Senators Bill Beard (D-Imperial) and Fred Faar (D-Monterey County) introduced a Joint Resolution, urging Congress to enact a minimum wage law for agricultural workers in the United States.

Governor Brown characterized the defeat of the minimum wage bill as "only one battle in the long war against poverty".

"I don't consider it a complete loss because I think the people have been educated to the fact that some workers in the State are not earning enough money in this day and age of prosperity," he added.

"I consider a person earning less than 90 cents an hour and working eight hours a day in the field as not being sufficiently compensated". The Governor pledged to renew his fight for a State minimum wage law when the California Legislature convenes in 1961.

## A.B. 302 — CLAIM FOR WAGES

Authored by Assemblyman Edward Gaffney (D-San Francisco), A.B. 302 makes it a misdemeanor for an employer to require execution of a release of claim for wages, unless payment is made. The measure was designed to remedy abuses by employers who require employees to release their claims for wages as a conditional settlement for an amount less than actually due.

(Continued on Page 17)

— 15 —

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 8
55

# SOCIAL WELFARE

**T**WO BILLS increasing aid to the aged, effective January 1, 1960 have been signed by the Governor.

S.B. 867, authored by Richard Richards (D-L.A.) and A.B. 123 by Edward Elliott (D-L.A.) raise the maximum basic aid from $90 to $95 a month and the special needs grant from $106 to $115 a month.

S.B. 867 revises the method for computing aid grants to the needy disabled by providing that the grant shall be equivalent to the actual needs of the recipient, not to exceed an average grant, computed statewide, of $98 a month. Current law does not specify the amount of grant for the disabled but by reference makes the maximum payable for old age security the maximum for the disabled. The new law will be independent of the old age security law but will retain the present maximum of $106 a month, plus an allowance for attendant service outside public institutions.

Aid to the needy blind was provided in A.B. 1535 and A.B. 1536 by Edward Gaffney (D-San Francisco).

A.B. 1535 provides an across-the-board increase from $99 to $104 a month for the needy blind. It also increases the special needs grant from $110 to $115 a month.

A.B. 1536 gives a $5 monthly across-the-board increase in aid to the partially self-supporting blind. The measure increased the amount of earnings such persons may retain from $1000 to $1200 a year.

Both aid-to-the-blind bills are effective January 1, 1960.

The additional cost of the increases for the aged and blind is estimated at $16 million a year and will affect about 290,000 persons.

## AID TO THE NEEDY DISABLED

### A.B. 288

Governor Brown has affixed his signature to A.B. 288, authored by Assemblymen "Gus" Hawkins and Vernon Kilpatrick, both Los Angeles Democrats.

The bill, which was proposed by the Governor in his Inaugural Message, extends the coverage of the public assistance medical care program to include recipients of aid to the needy disabled. It will complete coverage of the medical care program enacted by the 1957 session of the Legislature, which covered only needy children, the aged and the blind.

The estimated monthly caseload of disabled persons in the next fiscal year will be about 9300.

The $470,000 annual cost of the program was also put in the budget by the Governor.



Assemblyman Edward Elliott, Los Angeles, sustains an outstanding record of liberal legislation.

## Job Placement Services for Older Workers

The Governor's program to end job discrimination against the aged, resulted in legislation which establishes a special placement service within the Department of Employment, for those handicapped in getting jobs, because of age.

The Department of Employment already maintains special placement services for veterans, agricultural labor and youth. The new legislation will expand the Department's counseling and job placement service for older workers, and 35 employment specialists have been assigned to these duties.

### A.B. 852 — RELATIVE RESPONSIBILITY

The obligation of a responsible relative to contribute to the support of an applicant for State old age benefits will be enforced in the future by civil rather than criminal action as provided by A.B. 852 (Jack Beaver-San Bernardino).

— 16 —

(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 8
56

# EDUCATION



CALIFORNIA'S EVER expanding population and the added financial burden is most sharply felt in the field of education. New communities, which literally spring up over night, necessitate additional schools, teachers, etc.

Forty-three per cent of the state budget is allocated and over ten per cent of all bills introduced in the legislature concern education.

The major legislation for education, in the past session, was A.B. 1000, authored by Assemblyman Ernest R. Geddes (R-Claremont). A veteran legislator, Geddes has served on the Assembly Education Committee for 15 years and is considered by his collegues to be the outstanding lawmaker on this subject.

A.B. 1000, increases the average daily attendance (A.D.A.) allocations for school districts from $193.37 to $201.10. It provides an additional $26,000,000 a year in state aid for public schools.

Geddes also authored A.B. 1008 which sets the minimum annual salary for any teacher in any California public school at $4,500.

## LABOR LEGISLATION

(Continued from page 15)

### A.B. 1153 — WAGE ATTACHMENT

When wages have been attached the notice of debts to be left with the person owing the wages must notify the employer that the defendant is entitled to an exemption of more than half of his wages in certain cases as provided by A.B. 1153 by Richard Hanna (D-Westminister).

### S.B. 673 — DISABLED WORKERS

A $53,384 appropriation to study the rehabilitation of industrially disabled workers is provided in S.B. 673 by McBride (D-Ventura).

### S.B. 1365 — CLAIMS FOR WAGES

The Division of Labor Law Enforcement may now act on claims for unpaid wages without regard to arbitration provisions in the collective bargaining contract, when the contract itself is not at issue. The new law became effective with the passage of S.B. 1365, authored by Hugo Fisher (D-San Diego.)

### PAY RAISE

Effective July 1, 1959, all state employees, will receive a 5% pay raise, their first in two years. A study was made of comparable work in private industry and results show state workers paychecks are 7½% less.

The increase will average between $15 and $20 a month for the 76,500 state employees. It will raise the minimum monthly hiring rate from $243 to $255 a month.

Assemblyman Ernest R. Geddes, Claremont, outstanding legislator in the field of Education.

## Retired Teachers

Retired teachers will now be permitted to serve as teachers in rest homes for the aged, in community centers for aged or as substitute teachers with the passage of A.B. 1084, authored by Tom Bane and Ronald Cameron, Los Angeles Democrats.

## Bar Examination

Authored by Milton Marks (R-San Francisco), A.B. 2074, reduces the residence requirement before taking the final bar examination from 3 to 1 month for attorneys.

## Aid to Veteran's Children

Children of deceased or totally disabled veterans of the last three wars, attending school above the high school level and not receiving aid from any other unit of government, will receive a monthly increase of $40 to $50 under A.B. 285, authored by Charles Garrigus (D-Reedley).

— 17 —



LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 8
57