**UNITED EMPLOYEES LAW GROUP, P.C.**
Walter L. Haines, Esq. SBN 71075
Gregory A. Douglas, Esq. SBN 147166
Angie V. Phung, Esq. SBN 238949
65 Pine Avenue, #312
Long Beach, California  90802
Tel.:    (562) 256-1047
Fax:    (562) 256-1006
admin@unitedemployeeslawgroup.com

Attorneys for Plaintiffs
CHRISTOPHER CLARK & JAMES RENICK

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| CHRISTOPHER CLARK and JAMES RENICK, individual(s) | ) Case No.   08-CV 0500 JM RBB |
| | ) |
| Plaintiff(s), | ) **PLAINTIFF'S REQUEST FOR JUDICIAL** |
| | ) **NOTICE IN OPPOSITION TO** |
| vs. | ) **DEFENDANT'S MOTION FOR JUDGMENT** |
| | ) **ON THE PLEADINGS OR IN THE** |
| | ) **ALTERNATIVE PARTIAL SUMMARY** |
| CHASE HOME FINANCE, LLC, a Delaware LLC doing business in California; CHASE MANHATTAN MORTGAGE CORPORATION, a New Jersey corporation doing business in California; JAMES BOUDREAU, an individual; and DOES 1-25, | ) **JUDGMENT** |
| | ) |
| | ) Date:    May 30, 2008 |
| | ) Time:    1:30 p.m. |
| | ) Dept:    16 |
| | ) Judge:    The Hon. Jeffrey T. Miller |
| | ) |
| Defendant(s). | ) |
| | ) |

UNITED
EMPLOYEES LAW
GROUP PC

1
PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1    Plaintiff's Christopher Clark and James Renick hereby submit the following Request for
2  Judicial Notice in support of their opposition to Defendant's Motion for Judgment on the Pleadings or
3  in the alternative for Partial Summary Judgment.

4

5                          **REQUEST FOR JUDICIAL NOTICE**

6

7

8       1.      ZHIYU ZHENG vs. SIEBEL SYSTEMS, INC., Superior court of the State of
9              California county of San Mateo case number 435601.
10      2.      RICHARD WARNER vs. EXPERIAN INFORMATION SOLUTIONS, Superior court
11             of the State of California county of Los Angeles case number BC362599

12

13

14  Dated: May 15, 2008                          _Gregory A. Douglas_
15                                          _____
                                                Gregory A. Douglas, ESQ.
16                                        UNITED EMPLOYEES LAW GROUP, PC
                                                Attorneys for Plaintiffs
17                                        CHRISTOPHER CLARK AND JAMES RENCIK

18

19

20

21

22

23

24

25

26

27

28

UNITED
EMPLOYEES LAW
GROUP PC

2
PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

**ENDORSED FILED**
SAN MATEO COUNTY

JUN 0 2 2006

Clerk of the Superior Court
By TERRI MARAGOULAS
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

| | |
|---|---|
| ZHIYU ZHENG, individually and on behalf of all others similarly situated, | Civil No. 435601<br>CLASS ACTION |
| Plaintiffs, | Assigned for All Purposes to Dept. 2,<br>Hon. Marie S. Weiner |
| vs. | |
| SIEBEL SYSTEMS, INC., and DOES I-X, | **ORDER RE: DEFENDANT'S MOTION RE: VALIDITY OF RELEASES** |
| Defendants. / | Dept 2<br>Hon. Marie S. Weiner |

On February 15, 2006, Defendant's Motion Submitted Pursuant to Court Order Re: The Validity of Releases, came on regularly for hearing in Department 2 of this Court before the Honorable Marie S. Weiner. Kathryn Burkett Dickson and Jeffrey Ross of Dickson - Ross LLP appeared on behalf of Plaintiff Zheng, and Lynne Hermle and Michael Aparicio of Orrick Herrington & Sutcliffe LLP appeared on behalf of Defendant Siebel Systems, Inc. After oral argument, the matter was taken under submission.

Plaintiff and the Class have alleged the eighth cause of action for failure to pay overtime wages in violation of Labor Code Sections 510, 558, and 1194, the ninth cause of action for failure to pay overtime wages at the time of separation in violation of Labor

1

Code Section 201, and the tenth cause of action for unfair, unlawful and/or fraudulent business practices in violation of Business & Professions Code Section 17200.

Defendant seeks to adjudicate their affirmative defense based upon the execution of releases by certain members of the certified Class. At a prior case management conference it was agreed by counsel for the parties that the Court should hear and determine, in this complex case, the Defendant's affirmative defenses based on the existence of releases from certain members of the Class, including the releases legality, enforceability, and effect.

### Issues Presented

Upon their termination of employment from Siebel Systems, whether voluntary or involuntary, approximately 145 class members, who were former employees of Defendant, executed a General Release. Defendant claims that this General Release knowingly waives all claims against Siebel, including the overtime wage claims raised in this class action lawsuit. Siebel continued to engage in soliciting these General Releases from departing employees since the filing of this lawsuit and even after the filing of this motion. Plaintiff and the Class contend that the General Releases are null and void pursuant to Labor Code Section 206.5.

First, Defendant asserts that Section 206.5 does not apply to half of the releases (executed in 2001 and 2002) because they are subject to ERISA, 29 U.S.C. §1001 *et seq.*, and thus the state law is preempted by federal law. Defendant asserts that under federal law, the releases are valid and enforceable.

Second, Defendant asserts that as it did not agree that it owed any overtime wages, and so these were "disputed" wages, not wages due and owing, which *could*

2

validly be waived, regardless of Section 206.5. Indeed, Defendant gave "severance benefits" to departing employees, which Defendant claims is due consideration for the release of claims.

Third, Defendant asserts that even if the release is void in one respect, i.e., waiver of wage claims, it is still enforceable as to a covenant not to sue, to dismiss claims, to cooperate with Siebel in any lawsuit, and to be liable for fees and reimbursement for severance benefits paid.

### Release Language

It should be noted first and foremost that the subject "General Release" does *not* explicitly state that the terminated employee may have or does have a dispute regarding payment of overtime wages, does *not* explicitly state that the terminated employee is releasing, waiving, and giving up claims for failure to pay overtime wages or claims for misclassification as exempt, and does *not* say that the severance package includes payment of all wages due and owing for services provided.

On the other hand, the General Release specifically states that the terminated employee is giving up any and all claims for wrongful termination and employment discrimination. The force and effect of the release upon such wrongful termination and employment discrimination claims is *not* contested in this lawsuit, and is not adjudicated by this Court in this lawsuit.

Based upon review of the releases of certain Class members attached as exhibits to the Declaration of Martha Galli, the Court was able to identify thirteen different "general release" forms used by Siebel and submitted to a Class member. Examples are reflected in the Exhibits stamped SIEBEL 15207 (year 2000, employee 40 and over), 15203 (year

2000, employee under 40), 15225 (year 2001, employee 40 and over), 15186 (year 2001, employee under 40), 15233 (year 2002, employee 40 and over), 15185 (year 2002, employee under 40), 15199 (year 2002, employee under 40), 15226 (year 2002, employee under 40)[has smaller print than version #15199], 15247 (year 2003, employee 40 and over), 15212 (year 2003, employee 40 and over), 15188 (year 2003, employee under 40), 15216 (year 2003, employee under 40), 15296 (year 2005).   Those General Release forms are herein incorporated by reference, to avoid the extensive space and repetition it would required to quote them in this Decision.  It should be noted that the form of general release now used by Siebel expressly provides that it is *not* a waiver of any overtime claims or claims based upon misclassification.[1]

### *Validity Of Releases To Waive Right To Overtime Wages*

California Labor Code Section 206.5 states as follows:

> No employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of such wages has been made.  Any release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee and the violation of the provisions of this section shall be a misdemeanor.

Section 200(a) of the Labor Code defines "wages" as follows:  "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."  "Wages" include bonuses, health benefits, severance benefits,

---

[1]      "Notwithstanding any of the foregoing, I hereby reserve any rights I may have to unemployment or worker's compensation insurance, under Siebel's 401k Plan, and any claim that I may have that my position was improperly classified as 'exempt' under federal or state overtime law."  SIEBEL 15296.

4

sales commissions. See <u>Kerr's Catering Services v. Department of Industrial Relations</u> (1962) 57 Cal.2d 319 (sales commissions are wages); <u>Quillian v. Lion Oil Co.</u> (1979) 96 Cal.App.3d 156 (bonuses are wages); <u>Ralphs Grocery Co. v. Superior Court</u> (2003) 112 Cal.App.4th 1090 (bonuses are wages); <u>Road Sprinkler Fitters Local Union No. 669 v. G&G Fire Sprinklers, Inc.</u> (2002) 102 Cal.App.4th 765 (overtime compensation, health benefits, and fringe benefits all are wages). Section 201(a) mandates that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

Plaintiff and the Class contend that Defendant failed to pay overtime compensation due and owing, because Defendant wrongfully misclassified software engineers as exempt employees rather than non-exempt. Thus, during the course of employment and at the time of termination of employment (if any), Plaintiff and the members of the Class contend that they were entitled to payment of all unpaid overtime compensation, based upon labor and services that they had already performed for Siebel.

Such an employee has a statutory right to sue to recover unpaid overtime compensation, pursuant to Labor Code Section 1194. "Entitlement to overtime compensation . . . is mandated by statute and is based on an important public policy. . . . 'The duty to pay overtime wages is a duty imposed by the state; it is not a matter left to the private discretion of the employer. [Citations.] California courts have long recognized [that] wage and hours laws concern not only the health and welfare of the workers

themselves, but also the public health and general welfare. [Citation.]'" <u>Road Sprinkler</u>, 102 Cal.App.4th at p. 778; <u>Earley v. Superior Court</u> (2000) 79 Cal.App.4th 1420, 1430.[2]

Although enacted in 1959, there is little case law on Section 206.5. Indeed, the Court has only been able to find three reported decisions in California even mentioning this statute.[3]

In <u>Woods v. Fox Broadcasting Sub., Inc.</u> (2005) 129 Cal.App.4th 344, the Court of Appeal, in reversing the granting of a demurrer on causes of action for interference with contract, held that a determination of whether plaintiffs' existing stock options were waived by a release arising on the context of the sale of a business was not an issue ripe for adjudication on appeal, but rather must be determined by the trial court upon remand. The Court of Appeal declined determination of whether or not the stock options were "wages", and thus declined to determine whether the release was unlawful under Labor Code Section 206.5. Accordingly, the case provides no guidance here.

In <u>Boothby v. Atlas Mechanical, Inc.</u> (1992) 6 Cal.App.4th 1595, the issue was whether a former employee was entitled to compensation for unused earned vacation time,

---

[2]    Further, if the purpose of the General Release was to absolve Defendant of its illegal failure to pay overtime wages, if liability is so proven by Plaintiff and the Class, the contract itself may be contrary to law and unenforceable. Civil Code Section 1668 states:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, **or violation of law**, whether willful or negligent, are against the policy of the law.

[3]    Defendant also asks this Court to rely upon <u>Reid v. Overland Machined Products</u> (1961) 55 Cal.2d 203, which discusses the effect of Section 206. The <u>Reid</u> case does not discuss Section 206.5, especially since the case dealt with an employer's failure to pay employee commissions back in 1952 and 1953 – *years* before Section 206.5 was enacted. Accordingly, the <u>Reid</u> case is inapposite.

or whether the employee was subject to a "use it or lose it" limitation.  In the context of the decision, the Court of Appeal held that vacation pay is "wages" under Section 200 and that "[w]ages, in turn, are jealously protected by statutes for the benefit of employees.  For example, section 206.5 makes it a misdemeanor for an employer to require an employee to execute a release of a claim for wages unless the wages have been paid." Id., at p. 1601. Applying this reasoning, a release executed by an employee of Defendant would *not* release a claim for unpaid wages – as it would otherwise constitute a crime.

In Sullivan v. Del Conte Masonry Co. (1965) 238 Cal.App.2d 630, 632–633, the First Appellate District held that, where the terminated employee contended that he was owed money for services performed, and the employer submitted a check to the employee with the proviso that it would be in full payment of all money due, the employee was entitled to cross-out the limiting language on the check, and thereafter cash the check, and still be able to sue for the remainder, pursuant to Labor Code Sections 206 and 206.5. The Court of Appeal held that the check was for wages "concededly due", under Section 206, because the employer's own books and records reflected that the amount was due. This does not vitiate the right of the employee to seek further payment of wages due. "Section 206 is designed to secure to the wage earner prompt payment of all wages concededly due and it expressly precludes an employer's coercing a settlement of disputed claims by offering conditional payment." Id., at p. 634. The Sullivan decision is not directly on point to the issue presented here.

Rather, Defendant makes the seemingly irrational contention that as long as an employer disputes that *any* more wages are due, then any payment made to the employee conditioned by a release is effective.  Such an interpretation would make Section 206.5

7

either superfluous or a nullity – neither of which is a proper interpretation of an enacted statute.

Defendant attempts to link together Section 206 and Section 206.5, and notes that both are discussed together in <u>Sullivan</u>. But one is *not* dependent upon the other. Section 206.5 explicitly provides that there can be no waiver of the right to *earned* wages – regardless of whether they are in dispute. This is also a more logical interpretation.

Accordingly, any provisions in the General Release forms, to the extent that they seek a release or waiver of overtime claims, of failure to pay wages due, or as to misclassification as exempt employees, are null and void pursuant to Labor Code Section 206.5, and thus unenforceable.

### ERISA Preemption

According to Siebel, during 2001 and 2002,[4] severance agreements and benefits were offered as part of an ERISA severance plan, including a requirements that participating employees execute a General Release in order to be eligible. Defendant claims federal ERISA preemption of Labor Code Section 206.5.

Plaintiff and the Class contest that these severance programs constitute an ERISA plan under federal law. For purposes of this motion, the Court will assume that they are true ERISA plans.

ERISA does not preempt wage laws nor overtime claims. ERISA pertains to retirement funds and severance benefits. Thus, it can have no pre-emptive power over release of wage and overtime claims.

_____

[4]     Defendant claims that there was an April 2001 ERISA Plan, August 2001 ERISA Plan, October 2001 ERISA Plan, and July 2002 ERISA Plan.

8

The parties have not presented a single federal case specifically holding that ERISA applies to wage and overtime claims. That's because there is none – at least none found by the Court (in its own independent legal research) nor the parties. Earned wages and overtime entitlement are not a part of any "plan" under ERISA. Accordingly, they cannot "become" subject to ERISA pre-emption through the backdoor, by assertion that releases as part of a severance benefits package can release non-ERISA claims.

Indeed, federal law is clear that ERISA does *not* pre-empt state laws pertaining to wages and overtime pay. Further, the federal Fair Labor Standards Act itself, which *does* pertain to wages and overtime pay, does *not* pre-empt state laws pertaining to wages and overtime pay *unless* the state law is *less generous* than the federal law. Clearly the subject here is not subject to any federal pre-emption.

Brand new federal decisions succinctly discuss established federal law on this point:

"In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." Massachusetts v. Morash, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989); *see also*, Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). But while ERISA serves these important congressional objectives, it was not designed to address every conceivable aspect of an employee's monetary rights, and it is not primarily concerned with hourly wages and overtime pay, the domain of the FLSA and its state counterparts. As the Supreme Court has instructed, "the danger of defeated expectations of wages for services performed [is] a danger Congress chose *not* to regulate in ERISA." Morash, 490 U.S. at 115 (emphasis added); *see also* Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., 519 U.S. 316, 327, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). For this reason, "the distinction between 'wage' compensation (not regulated by ERISA) and 'benefit' compensation (regulated by ERISA) must be sensitively drawn to avoid invalidating state regulatory schemes Congress intended to encourage." Cal. Hosp. Assn. v. Henning, 770 F.2d 856, 861 (9th Cir. 1985).

Perdue Farms, Inc. v. Traversl Casualty and Surety Co. of America (4th Cir. 2006) 2006

U.S.App. LEXIS 12049, at pp. *23-24.

> The court begins its analysis by noting that defendants correctly concede that the FLSA does not preempt Hardesty's state law claims for wages [earned but unpaid at time of termination]. It is well established that the FLSA, in its core areas of protection – minimum wage and overtime regulation – has a relatively narrow pre-emptive effect as it does not completely preempt state laws but only preempts them to the extent that they are less generous than the FLSA. 29 U.S.C. §218(a); Morales v. Showell Farms, Inc., 910 F.Supp. 244, 248 (M.D.N.C. 1995) (comparing the narrow pre-emptive effect of the FLSA to the broad pre-emptive effect of ERISA). Given the lack of complete preemption of state wage and hour claims, Hardesty's claims under state law are not automatically converted into federal claims unless the governing state law is less generous than the FLSA. . . .
>
> . . . [A]n employee cannot waive FLSA rights by agreement with an employer. [Citations.] Indeed, defendants cite no case for the proposition that an employee is required to bring suit under federal law to recover "wages due."

Hardesty v. Logan Regional Medical Center (S.D.W.Va. 2006) 2006 U.S. Dist. LEXIS

22220, at page *8.

> Although ERISA is indeed expansive in its scope, its preemptive effect pertains to state laws insofar as they may effect an employee benefit plan. Hourly and overtime wages do not fall within the category of an employee welfare benefit plan or an employee pension benefit plan. This is not an action to obtain benefits under a plan.
>
> Overtime and sick leave pay are practices that generally do not constitute employee benefit plans. See 29 C.F.R. §2510.3-1 (1995). The Secretary of Labor has excluded from the classification of employee welfare benefits plans certain payroll practices, such as overtime pay . . . The overtime and sick leave wages at issue here fall within the payroll practices provision because they are payable based on the employee's normal rate of compensation, out of the employer's general assets, and without additional conditions or contingencies or any kind. [Citations.].

In re Palmas Del Mar Properties, Inc. (D.P.R. 1996) 932 F.Supp. 36, 39-40.

As set forth above, it is not subject to dispute under federal law that ERISA has nothing to do with wage and overtime statutes or the waiver of such state law rights. This is so here, because Plaintiff and the Class do not assert any rights under an employee benefit plan, nor that their employment was terminated in order for the employer to avoid paying benefits under a retirement plan.[5] Plaintiff and the Class assert their right to payment of overtime wages for services already rendered while they were employees of Siebel, and that such wages due were not paid during their employment nor paid upon their termination. There is no ERISA preemption here.

FLSA, which *does* have to do with wage and overtime laws, does *not* preempt the claims here, nor preempt Labor Code Section 206.5.

Accordingly, Defendant's affirmative defense, on the ground that Labor Code Section 206.5 and/or the claims asserted by Plaintiff and the certified Class are preempted by federal law, is adjudicated in favor of Plaintiff and the certified Class.

### Defendant's Alleged Cross-Claims Have No Validity

### 1. Defendant's Putative Claim For Repayment Of All Severance Benefits

Although there are slight language differences between certain forms of General Releases executed by certain Class members, they each contain language substantially similar to the following: "I further understand that if the release of Claims described above is held invalid or unenforceable by any court of final jurisdiction, Siebel has the right

---

[5] "The Supreme Court has recognized that ERISA does not preempt state laws that might afford parallel relief from the same set of facts as long as the state law claims do not protect those rights protected by Section 510 of ERISA. [Citation.]" Trotter v. Perdue Farms, Inc. (D.Del. 2001) 168 F.Supp. 277, 283. "In all of those courts that have found ERISA preemption of a state claim, the plaintiff's complaint alleged that the employer's sole motivation was to defeat or diminish the plan benefits to which the employee was entitled." Id., at p. 285.

in its sole discretion to request repayment of the consideration described above, unless Siebel is prohibited from doing so under applicable law." (SIEBEL 15225.)

Defendant argues that if the General Release is null and void, then it is entitled to return of the "severance benefits" paid to each terminated employee who is a member of the Class, in that rescission requires the return of the consideration paid. Not so.

First, Plaintiff and the members of the certified Class have *not* sued for rescission of the release. Nor has Defendant sued for rescission of the release – indeed, how could Defendant, given that Defendant drafted the document and presented to each terminated employee. Thus a "remedy" of return of funds due to rescission is non-existence here.

Second, Plaintiff and the Class seek to stop enforcement of the General Release to the extent that it seeks to bar the claims herein for unpaid overtime wages, on the basis that such provisions are unlawful and contrary to statute. This Court is *not* making any ruling as the force, effect, and propriety of the General Release in regard to other claims, such as wrongful termination, discrimination, etc. Such claims are explicitly discussed in the General Release, and thus may have legal force and effect – but that is not the subject of this lawsuit. There is no showing, nor did Plaintiff and the Class ask, that the entire release is null and void. According to Defendant, consideration was given as severance benefits for execution of the General Release, and Defendant may well have bought itself a viable release of other types of claims. Thus, there is no showing that complete restitution of the severance benefits paid by Defendant is appropriate.

Third, at best, Defendant *may* be entitled to an offset of any damages assesses against it by any judgment in this action by a portion of the monies paid to each terminated

employee who is a member of the certified Class. At present, Defendant is not liable for anything, so no right of offset exists at this time; and may be left for another day.

### 2. *Employee Breach Of The General Release Contract*

Similarly, Defendant has no valid claim for breach of contract against the Class members who executed releases, as there is no valid claim for a "breach" of an illegal provision of a contract, nor can its performance be enforced.

Indeed, the contractual provisions relied upon by Defendant to allegedly require the former employee to refuse to cooperate or participate in any proceeding against Siebel, and to dismiss any claims against Siebel, is expressly contingent on that it be "in connection with any Claims released in the first paragraph above" and/or "any matter released in the first paragraph above." (ex., SIEBEL 15225) Here, the Court has held that the claims asserted herein were *not* released, and thus these provisions of the contract are *not triggered.*

### 3. *Contractual Demand For Attorneys Fees And Costs*

Although the employer is *not* entitled to recover attorneys' fees on claim regarding failure to pay overtime wages, etc., Siebel now claims that it is entitled to such fees based upon the General Release contract executed by departing employees, as a "breach of contract" because a lawsuit was brought in "violation" of the covenant not to sue. This stands the law on its head.

*None* of the claims that Plaintiff and the Class are asserting permit a prevailing defendant employer to be awarded fees.

Thus, if an employee is unsuccessful in a suit for minimum wages or overtime, section 1194 does not permit a prevailing employer to recover fees or costs. "Statutes expressly permitting fees for only a particular prevailing party have been interpreted as denying fees for the other party,

13

even if it prevailed." [Citations.]  Nonetheless, defendant argues that sections 218.5 and 1194 should be read together to allow the prevailing party (be it the employer or employee) to recover fees and costs in any overtime compensation claim case.  However, "one-sided statutory and judicially mandated fee-shifting provisions serve a specific public policy which would be vitiated by the grant of reciprocity." [Citations.]

Accordingly, section 1194, as the one-way fee-shifting statute made specifically applicable by the legislature to overtime compensation claims, should be recognized as the *sole* statutory authority for the award of attorney's fees upon the successful prosecution of such claims.  [Citation.]

Earley, 79 Cal.App.4th at p. 1429.  As Plaintiff and the Class' claim is brought pursuant to statute, the statute applies, not contract.

Defendant is not entitled to attorneys' fees under B&P Code Section 17200, either.  See, Walker v. Countrywide Home Loans, Inc. (2002) 98 Cal.App.4th 1158, 1179-1180.

Indeed, having such a provision in the releases to try and create an obligation to pay fees and costs of Siebel regarding an overtime dispute may itself be a violation of law.  See Podolsky v. First Healthcare Corp. (1996) 50 Cal.App.4th 632, 649-651.

Defendant is not entitled to set up a transaction to pay terminated employees a "severance" in order to obtain a right to which Defendant is not entitled under law, namely to then sue the employee for fees and costs if *Defendant* is sued for violation of the Labor Code.

Defendant asserts that even though it has no right under statute to fees, Siebel can circumvent this by putting a fee provision in its General Release form.  An example of the language that Defendant relies upon is as follows:  "I further agree that if I breach the terms of this General Release Of All Claims ("General Release"), including, but not limited to, directly or indirectly, bringing, joining or assisting in any legal action against Siebel

14

related to Other Actions or any of the Claims released hereunder, I agree to pay Siebel's reasonable attorneys' fees and costs incurred in enforcing the terms of this General Release if it is lawful under applicable law for Siebel to require such payments."  (SIEBEL 15225.)

First, the fee provisions only applies if there is a "breach" of the contract, and the Court has found that there is no breach because failure to comply with an illegal and unenforceable provisions is not a breach of contract.

Second, this is not a legal action as to "Claims released hereunder", because these claims for earned yet unpaid overtime wages are *not* claims which were released (and could not be released) under the contract, as they are held to be illegal and void.

Third, as set forth above, it is contrary to law for the employee to seek and obtain attorneys' fees on the statutory claims asserted by Plaintiff and the Class herein.

The "Claims" asserted by Plaintiff and the Class in this lawsuit, namely their misclassification as exempt employee, seeking payment of overtime wages due, is held by this Court *not* to be a "claim" released by the General Release used by Siebel.  The provision in the General Release that Defendant relies upon to claim that there is a "breach" by the employees for bringing this lawsuit, and a "breach" for participating in this class action, and an obligation to pay fees and costs to Defendant for litigating this case, does not support Defendant's position.  The provisions expressly state that they apply to *claims released by virtue of the general release itself.*  As the Court has held that these overtime wage claims and misclassification claims are *not* "claims" which have been release nor could be released – because it would be *illegal* – they do *not* constitute "any of

15

the Claims released hereunder". Thus, Defendant has no contractual basis for any cross-claim herein.

IT IS HEREBY ORDERED as follows:

1.     Defendant's request for judicial notice of the legislative history of Labor Code Section 206.5 is GRANTED.

2.     The "General Releases" presented by Siebel to certain members of the Class upon their termination of employees do *not* bar, waive or release the claims asserted by the Class members in this lawsuit, pursuant to Labor Code Section 206.5.

3.     Defendant is *not* granted leave to file any cross-complaints or other cross-claims in this action against members of the certified Class, based upon the "General Releases", without prior Court approval.

DATED:     May 31, 2006

_____
HON. MARIE S. WEINER
JUDGE OF THE SUPERIOR COURT

16

**ENDORSED FILED**
SAN MATEO COUNTY

AFFIDAVIT OF MAILING

JUN 0 2 2006

CASE NUMBER: **CIV 435601**

Clerk of the Superior Court
By TERRI MARAGOULAS
DEPUTY CLERK

**ZHIYU ZHENG**, individually and on behalf of all others similarly situated,
vs.

**SIEBEL SYSTEMS, INC.** and DOES I-X

DOCUMENT:   ORDER RE: DEFENDANT'S MOTION RE: VALIDITY OF
RELEASES

I declare, under penalty of perjury, that on the following date I deposited in the United
State Post Office Mail Box at Redwood City, California a true copy of the foregoing
document, enclosed in an envelope, with the proper and necessary postage pre-paid
thereon, and addressed to the following:

KATHRYN BURKETT DICKSON
JEFFREY ROSS
DICKSON ROSS LLP
1970 Broadway, Suite 1045
Oakland, CA 94612

DAVID BORGEN
LINDA DARDARIAN
LAURA HO
GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA 94612

LYNNE HERMLE
MICHAEL APARICIO
ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

Executed on June 2, 2006 at Redwood City, California

JOHN FITTON
CLERK OF THE COURT

By: Terri Maragoulas
Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 09/21/07

**DEPT.** 323

HONORABLE CAROLYN B. KUHL          JUDGE   N. NAVARRO          DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR

J. O'NEAL, C.A.          Deputy Sheriff   NONE          Reporter

BC362599

RICHARD WARNER
VS
EXPERIAN INFORMATION SOLUTIONS

Plaintiff
Counsel          NO APPEARANCES

Defendant
Counsel

COMPLEX (2/08/07)

**NATURE OF PROCEEDINGS:**

COURT'S RULING ON SUBMITTED MATTER

This Court having taken Defendant Experian Information
Solution, Inc.'s Demurrer to Plaintiff's Complaint
under submission on June 22, 2007, now issues its
"Opinion and Order on Defendants' Demurrer to
Plaintiff's Complaint," which is filed and entered
this date.

Defendant's Demurrer is OVERRULED, as more fully
reflected in the Court's Opinion and Order.

The Court sets a Further Status Conference for
October 11, 2007 at 9:00 a.m. in Department 323.

Counsel for plaintiff is ordered to give notice to
all parties.


CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
9-21-07 upon each party or counsel named below by
depositing in the United States mail at the courthouse

Page   1 of   2     DEPT. 323

MINUTES ENTERED
09/21/07
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 09/21/07

DEPT. 323

HONORABLE CAROLYN B. KUHL    JUDGE    N. NAVARRO    DEPUTY CLERK

HONORABLE    JUDGE PRO TEM    ELECTRONIC RECORDING MONITOR

J. O'NEAL, C.A.    Deputy Sheriff    NONE    Reporter

| | | |
|---|---|---|
| BC362599 | Plaintiff Counsel | NO APPEARANCES |
| RICHARD WARNER VS EXPERIAN INFORMATION SOLUTIONS | Defendant Counsel | |
| COMPLEX (2/08/07) | | |

NATURE OF PROCEEDINGS:

in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date: 9-21-07

John A. Clarke, Executive Officer/Clerk

N. NAVARRO

By: _____
        N. NAVARRO, Deputy Clerk


ERIC M. EPSTEIN
1901 Avenue of the Stars,#1100
Los Angeles, CA 90067

Page    2 of    2    DEPT. 323

MINUTES ENTERED
09/21/07
COUNTY CLERK

ORIGINAL FILED

SEP 2 1 2007

LOS ANGELES
SUPERIOR COURT

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| RICHARD WARNER, individually and on behalf of himself, the general public, and all others similarly situated, | Case No. BC 362599 |
| Plaintiff, | |
| vs. | **OPINION AND ORDER ON DEFENDANTS' DEMURRER TO PLAINTIFF'S COMPLAINT** |
| EXPERIAN INFORMATION SOLUTIONS, INC., a California corporation, and DOES 1 through 100, inclusive, | |
| Defendants. | |

Defendant Experian Information Solutions, Inc. ("Experian") has demurred to Plaintiff Richard Warner's putative class action complaint. The court has considered all of the briefs, objections and arguments presented on behalf of Plaintiff and Defendant. For the reasons stated in the following Opinion and Order, Experian's Demurrer to the complaint is overruled.

## I. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff was employed at Defendant credit reporting company as a programmer consultant. (See Compl., ¶7.) Plaintiff alleges that Experian misclassified him as an

1

exempt employee, failed to pay him overtime wages and failed to provide him with meal and rest breaks as required under California law. (*Id.*, ¶¶26, 34.) Plaintiff filed a class action complaint against Experian alleging four causes of action for: (1) unpaid overtime wages (Lab. Code §510 and Wage Order No. 4-2001); (2) failure to provide meal and rest periods (Lab. Code §226.7 and Industrial Wage Order No. 4-2001); (3) waiting time penalties (Lab. Code §§201-03); and (4) unfair competition (Bus. & Prof. Code §§17200, *et seq.*).

Plaintiff's complaint defines two classes: (1) "Class A" is comprised of all current and former employees in California who, within four years of the filing of the complaint, served as programmer consultants and were not paid overtime wages; and (2) "Class B" is comprised of all current and former employees in California who, within four years of the filing of the complaint, served as programmer consultants and were not provided with required meal and rest breaks. (Compl., ¶15.) Plaintiff alleges that he is a member of both classes. (*Id.*, ¶¶26, 34, respectively.)

Plaintiff also alleges that at the time his employment relationship with Experian was terminated (on or about June 8, 2005), he signed a document entitled "Acknowledgement and Release Agreement" (Release Agreement). (Compl., ¶8; Exh. A.) In this Release Agreement, Plaintiff purportedly released Experian from, among other things, all claims, wage demands and causes of action (known or unknown, suspected or unsuspected), that Plaintiff had against Experian, including, but not limited to, all occurrences, acts, and omissions in any way connected to Plaintiff's employment relationship with Defendant and the termination of said employment. (*Id.*) The Release Agreement contained a provision by which Plaintiff acknowledged and agreed that he

2

had been paid all wages and accrued vacation owing to him at the time of his termination, and that no additional amount was owed to him. (*Id.*)

Plaintiff alleges that at the time he signed the Release Agreement, he had no knowledge that he was entitled to the overtime wages he claims in this lawsuit. (See Compl., ¶9.) Accordingly, there was no dispute over wages at the time Plaintiff executed the Release Agreement. Plaintiff alleges that "[t]he purported release contained in the Release Agreement is unenforceable in that it violates Labor Code, Sections 206.5 and Section 1194(a), and therefore Defendant is estopped from asserting the Release Agreement as a defense to the causes of action set forth herein." (*Id.*, ¶10.)

Pursuant to Code of Civil Procedure §§430.10(a) and (e), Experian demurs to Plaintiff's Complaint on the ground that each of the four causes of action is barred by the Release Agreement executed by Plaintiff as alleged in the Complaint. Experian asserts that neither Labor Code section 206.5 nor 1194(a) prohibits the release of a claim regarding the propriety of an employee's classification as an exempt employee or a claim that an employee worked overtime hours. Experian argues that such factual disputes can be, and have been, waived by Plaintiff when he signed the Release Agreement.

Plaintiff contends that the Release Agreement does not void his claims because Labor Code section 206.5 plainly states that any release is null and void to the extent it purports to release any claim or right on account of wages due, unless payment of such wages has been made. Plaintiff asserts that Section 206.5 is clear and that Defendant improperly attempts to alter that statute's meaning by importing language found in Section 206.

## II. LEGAL ANALYSIS

A. <u>Demurrers Generally</u>

"In reviewing the sufficiency of a complaint against a general demurrer, this court treats the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) A demurrer is sustained where the complaint fails to state facts sufficient to constitute a cause of action. (*Id.*) In analyzing demurrers, courts determine whether parties allege facts sufficient to justify relief on any legal theory. (*Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1811-12.) Material facts properly pled are taken as true. (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713.) Courts construe liberally all allegations stated in a pleading subject to demurrer. (Cal. Code. Civ. Proc. §452; *Taylor v. S&M Lamp Co.* (1961) 190 Cal.App.2d 700, 703-04. Demurrers should be sustained where the pleadings fail to state facts sufficient to constitute a cause of action. (Cal. Code Civ. Proc. §430.10(e).)

B. <u>Relevant Statutory Provisions</u>

Labor Code section 206 provides that an employer must pay wages that it concedes are due, even when there is a dispute over additional sums that the employee claims are owed. The statute states:

> (a) In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed.

> (b) If, after an investigation and hearing, the Labor Commissioner has determined the validity of any employee's claim for wages, the claim is due and payable within 10 days after receipt of notice by the employer that such wages are due. Any employer having the ability to pay who willfully fails to pay such wages within 10 days shall, in addition to any other applicable penalty, pay treble the

4

amount of any damages accruing to the employee as a direct and foreseeable consequence of such failure to pay.

Labor Code section 206.5, enacted subsequent to Labor Code section 206, addresses releases and provides:

> No employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of such wages has been made. Any release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee and the violation of the provisions of this section shall be a misdemeanor.

Labor Code section 1194(a) allows an employee to file a lawsuit to recover overtime compensation regardless of an express agreement to work for a lower wage:

> (a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

C.  Plaintiff Sufficiently Alleges that the Release Agreement is Unenforceable

Plaintiff contends that the Release Agreement he signed on or about June 8, 2005 is unenforceable because it violates Labor Code sections 206.5 and 1194(a).  (Compl., ¶10.)  The relationship between Section 206.5 and Section 206 is at the heart of the disagreement between Plaintiff and Defendant, and is an appropriate starting point for this discussion.

Labor Code section 206 was enacted prior to section 206.5 and should be considered first.  Section 206 addresses the potential that an employer who disagrees with its employee over the amount of wages due may attempt to obtain leverage over the employee in the dispute by refusing to pay all wages, including amounts the employer concedes are due.  The statute establishes a more level playing field between employer

5

and employee with respect to a wage dispute by requiring that undisputed wages be paid timely and unconditionally. The employee then may pursue the disputed amount by filing suit or seeking other available remedies.

Section 206 does not address how disputed wage claims should be resolved and does not consider whether such claims may be released. Thus, section 206 does not resolve the issue raised by the demurrer in this case. The complaint alleges that, at the time plaintiff left his employment with Experian, there was no dispute over overtime or other wages due. By implication, Experian paid plaintiff all of the wages Experian conceded were due. Indeed, plaintiff alleges no violation of section 206.

Section 206, however, provides a background against which section 206.5 must be understood. The statutory scheme enacted by the legislature should be considered as a whole, attempting to give effect to every part.

Experian argues that "[s]ection 206.5 applies only when the dispute between an employer and employee involves the amount of wages due, and the employer coerces a settlement of that wage dispute by withholding payment of the portion the employer concedes is due." (Experian's Reply Brief at p. 1.) But this argument only could be sustained by improperly adding words to the statute. Section 206.5 does not say anything about withholding wages to coerce settlement of a dispute. Moreover, section 206.5 is not limited by its terms to situations in which there is a dispute between employee and employer at the time the release is signed.

The omission of a reference to a dispute in section 206.5 is particularly significant because, in enacting section 206.5, the legislature was acting against the background of section 206, which addresses employer conduct when a wage dispute has arisen. It can

6

be inferred from the legislative context that, if the legislature had intended section 206.5 to be limited to situations in which a dispute had arisen at the time the release was signed, it would have expressed that limitation.  Instead, the legislature precluded requiring release of "any claim or right" to wages.  (Labor Code §206.5.)  The release of a "right" can be required even when the person entitled to the right is not aware of that entitlement.  That is the circumstance alleged in the Complaint; plaintiff states that when he signed the Release Agreement he was unaware he was entitled to overtime wages.

It follows, then, that section 206.5 is properly read, according to its plain meaning, as applicable to "*any* release of *any* claim or right" to wages owed but not paid.  (*Id.* (emphasis added).)  If such release is "require[d]" by the employer, it is null and void.  (*Id.*)

Defendant argues that such a broad prohibition on release of claims is contrary to the general policy of the law favoring settlement and enforcement of contracts.  But section 206.5 is not the only statute that makes an exception to the policy favoring enforcement of contracts when the subject of the contract is employee wages.  Labor Code section 1194(a) effectively voids all contracts to provide work in return for a salary less than minimum statutory standards.  California law is unabashedly paternalistic in protecting employees from substandard wages, regardless of an employee's ignorance of his statutory rights or willingness to forego those rights.  (*Cf.*, Labor Code §5001 (worker's compensation benefits may not be compromised without approval of the appeals board or referee).)

Interpreting Labor Code section 206.5 to nullify a release of unknown wage claims if the release is "require[d]" is consistent with relevant case law.  In *Reid v.*

7

*Overland Machined Products* (1961) 55 Cal. 2d 203, the defendant employer sent plaintiff employee a check for wages concededly due, but with a restrictive endorsement noting that the check represented payment in full of all commissions due. The plaintiff did not cash the check, and sued the employer to recover all wages that plaintiff believed to be due. The employer contended that plaintiff's retention of the check constituted an accord and satisfaction. (55 Cal. 2d at 206-07.) The Supreme Court rejected the employer's argument. The Court noted that Labor Code Section 206 expressly precluded the type of activity undertaken by the employer – that is, attempting to coerce a settlement of disputed wages by offering conditional payment. (*See id.*)

Defendant cites the following statement by the *Reid* court in support of its contention that the release at issue in this case should be enforced: "An employer and employee may of course compromise a bona fide dispute over wages but such a compromise is binding only if it is made after the wages concededly due have been unconditionally paid." (*Reid, supra,* 55 Cal.2d at 207.) However, the *Reid* Court did not take into account the effect of Labor Code section 206.5, because the facts at issue in that case occurred before the enactment of section 206.5 and thus could not have been subject to that statute. (*See, id.* at 206 (events giving rise to the case occurred in 1954); Stats. 1959, c. 1066, p. 3127 (memorializing enactment of section 206.5).) Moreover, as discussed below, section 206.5 does not preclude compromise of a "bona fide dispute over wages."

In *Sullivan v. Del Conte Masonry Co.* (1965) 238 Cal.App.2d 630, plaintiff brought an action against his former employer seeking an accounting and payment of money due under an employment agreement. (*Id.* at 631.) As in *Reid,* the plaintiff

employee was sent a check for wages concededly due, but with a restrictive endorsement. This plaintiff struck out the endorsement, cashed the check, and sued for additional wages he alleged were due. (*Id.* at 632.) The *Sullivan* court relied on *Reid* to reject the defendant employer's contention that the check constituted an accord and satisfaction. (*Id.* at 633.)

As pointed out by the *Sullivan* court, the situation presented was a dispute over negotiation of a check for wages concededly due, which was governed by Labor Code section 206. (*See id.* at 631.) However, the Court of Appeal did state, relying on *Reid*: "This is not to say . . . that an employer and employee may not compromise a bona fide dispute over wages. But such a compromise is binding only if made after wages concededly due have been unconditionally paid." (*Id.* at 634, *citing Reid, supra,* 55 Cal. 2d at 208.) This statement is not inconsistent with this court's interpretation of Labor Code section 206.5

As discussed above, section 206.5 is utterly general in its applicability to "*any* release of *any* claim or right . . . .*" (Labor Code §206.5 (emphasis added).) The act prohibited is an employer's "requir[ing] the execution" of a release of a wage claim. Labor Code section 206 expressly determines that it is improper for an employer to withhold wages concededly due to gain leverage in seeking a release of a disputed wage claim. Construing the statutory provisions together, section 206.5 should be interpreted to preclude at least that which section 206 does not allow. That is, an employer's withholding of wages concededly due while asking for a release of all wage claims should be considered "requir[ing]" execution of a release.

9

By implication, section 206.5 also should be interpreted to bar a release of wage claims demanded by an employer in exchange for any employment benefit to which the employee is entitled. That is, a release of wage claims is "require[d]" within the meaning of section 206.5 when an employee must sign the release to obtain any employment benefit otherwise due. While section 206.5 should be interpreted to prohibit that which section 206 also precludes, section 206.5 should not be interpreted to prohibit only releases that would be improper under section 206, because then the limitations of section 206.5 would be superfluous.

Conversely the statements in *Reid* and *Sullivan* strongly suggest that when there is a bona fide, actual dispute over wages between an employer and an employee, and the employer does not withhold benefits due the employee or otherwise coerce resolution of the disputed wage claim, the employer and employee may compromise that claim. But such a release is binding only if executed "after wages concededly due have been unconditionally paid." (*Sullivan, supra,* 238 Cal.App.2d at 634.)

The question then arises as to whether an employer "require[s]" release of a right to wages within the meaning of section 206.5 when the employer offers a severance payment to an employee in exchange for release of *unknown* wage claims. Such a release cannot be characterized as a compromise of a "bona fide dispute over wages." (*See, id.*) An employee cannot be said to have a bona fide dispute with his employer when the employee is unaware of his potential right to particular wages. The phrase "bona fide dispute" implies a good faith disagreement. A subjective attitude of good faith on the part of employee and employer is not possible unless each side is aware of the subject of

the dispute.  Thus, an employer may not enforce a blanket release of unknown wage claims.

Plaintiff has alleged that he was required to sign the Release Agreement and that when he signed the Release he had no knowledge he was entitled to the overtime wages he claims in this lawsuit.  Based on the analysis set forth above, the Release Agreement is unenforceable under the circumstances alleged in the Complaint.

## ORDER

For the reasons set forth above, Defendant Experian's Demurrer to Plaintiff Warner's Complaint is overruled.

DATED:  September 21, 2007

CAROLYN B. KUHL
Judge of the Superior Court

11