# EXHIBIT A

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

| 11 | CONCEPCION JIMENEZ, on behalf of herself and all others similarly situated, | CASE NO. 08-CV-0152 W (WMC) |

11   CONCEPCION JIMENEZ, on behalf of herself and all others similarly situated,     CASE NO. 08-CV-0152 W (WMC)

12                     **ORDER GRANTING-IN-PART AND DENYING-IN-PART**

13              Plaintiff,    **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**

14   vs.                       **COMPLAINT PURSUANT TO RULE 12(b)(6) AND RULE**

15   JP MORGAN CHASE & CO., et. al.,    **12(b)(1) (Doc. Nos. 11, 12)**

16                 Defendants.

17       On January 24, 2008 Plaintiff Concepcion Jimenez ("Plaintiff"), on behalf of

18   herself and all others similarly situated, commenced this class action against Defendants

19   JP Morgan Chase & Co. et. al. ("JP Morgan" or "Defendants") alleging various

20   violations of federal and state labor laws. (Doc. No. 1.)  Pending before the Court is

21   Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim and lack

22   of standing. (Doc. Nos. 11, 12.)  The Court takes the matter under submission and

23   without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the following reasons, the

24   Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion.

25   ///
26   ///
27   ///
28   ///

08cv0152W

# I.    BACKGROUND

Plaintiff Concepcion Jimenez, a California resident, worked as a Loan Officer for Defendants JP Morgan Chase & Co, et. al. (*Compl.* ¶ 33.) Defendants are a collection of affiliated banks which provide loan products and financial services across the country. (*Id.* ¶¶ 34–38.)

In summer 2007, Plaintiff's employment with Defendant was terminated. (*Mills Decl.* Ex. 3 at 10 [hereinafter "*Release Agreement*"].) In exchange for severance pay and benefits, Plaintiff signed a "Release Agreement" ("Release") that, subject to certain exceptions, released Defendants from any and all claims and waiver protections under federal, state, local and common law. (*Id.* at 8.) One exception, however, preserved Plaintiff's right to bring a federal Fair Labor Standards Act ("FLSA") claim for Defendants' failure to pay minimum wages or overtime. (*Id.*)

Under the Release Agreement's terms, Plaintiff agreed not to file a lawsuit on any released claims and promised not to participate in a class or collective action against JP Morgan. (*Id.* at 8–9.) Furthermore, Plaintiff represented that Defendants had paid all compensation owed to her, including overtime, as of the Release date. (*Id.*)

Before signing, Defendants allowed Plaintiff forty-five days to consider the Release Agreement, and Plaintiff was offered an additional seven days to revoke acceptance after signing. (*Id.* at 10.) Plaintiff attested that she signed the Release knowingly and voluntarily, and acknowledged that Defendants advised her to discuss the Release with her own attorney. (*Id.*)

On January 24, 2008 Plaintiff, on behalf of herself and all others similarly situated, commenced this class action against Defendants JP Morgan Chase & Co. et. al. alleging various violations of federal and state labor laws. (Doc. No. 1.) Plaintiff alleges that while she worked at JP Morgan, Defendants had a policy and practice of: (1) refusing to pay overtime compensation to Loan Officers who worked in excess of eight hours per day and/or forty hours per week, (2) failing to provide Loan Officers with all required meal and rest breaks, (3) failing to reimburse work-related expenses, (4) failing to

maintain accurate records of hours worked and wages paid, and (5) failing to pay all wages upon cessation of employment. (*Id.* ¶ 9.) Plaintiff seeks damages on her behalf, and also seeks to certify a Federal Rule of Civil Procedure[1] 23 "opt-out" class action and a FLSA "opt-in" collective action for other "similarly situated" plaintiffs. (*Id.* Prayer for Relief.)

On April 3, 2008 Defendants moved to dismiss Plaintiff's Complaint under Rules 12(b)(1) and 12(b)(6), arguing that Plaintiff's Complaint failed to state a claim, that Plaintiff lacked standing, and that the Court lacked jurisdiction to provide Plaintiff with redress. (Doc. No. 12.) On April 22, 2008, per an extension, Plaintiff filed her Opposition brief. (Doc. No. 13.) On May 1, 2008 Defendants filed their Reply. (Doc. No. 17.)

## II.   LEGAL STANDARD

Rule 12(b)(6) permits the court to dismiss a complaint, or a count therein, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under this rule tests the complaint's sufficiency. See N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of a claim according to this rule is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). As the Supreme Court recently explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v.

---

[1]Unless otherwise stated, all references to "Rule" shall be to the Federal Rules of Civil Procedure.

1 Twombly, 127 S. Ct. 1955, 1964 (2007). Rather, the allegations in the complaint "must

2 be enough to raise a right to relief above the speculative level." Id. at 1964–65. All

3 material allegations in the complaint, "even if doubtful in fact," are assumed to be true,

4 id., and the court must "construe them in the light most favorable to the nonmoving

5 party," Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002). In other words, the

6 court construes the complaint and all reasonable inferences in the plaintiff's favor.

7 Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

8      Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction

9 over the subject matter[.]" Fed. R. Civ. P. 12(b)(1). Although the defendant is the

10 moving party in a motion to dismiss, the plaintiff is the party invoking the court's

11 jurisdiction. Therefore, the plaintiff bears the burden of proof on the necessary

12 jurisdictional facts. McCauley v. Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001).

13      "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance

14 of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing

15 rely on affidavits or any other evidence properly before the court." St. Clair v. City of

16 Chico, 880 F.2d 199, 201 (9th Cir. 1989) (citing Thornhill Publishing Co. v. General

17 Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)); see also Marriot Intern., Inc. v.

18 Mitsui Trust & Banking Co., Ltd., 13 F. Supp. 2d 1059, 1061 (9th. Cir. 1998).

19

20 **III.   DISCUSSION**

21     **A.   Plaintiff's State Law Wage and Hour Claims Are Barred By the**

22          **Release Agreement**

23      Defendants argue that because Plaintiff voluntarily signed the Release Agreement

24 in exchange for severance pay, she cannot now bring claims against JP Morgan that were

25 previously released. (Defs.' Mot. 6–8.) Moreover, Defendants argue, Plaintiff

26 covenanted not to file a lawsuit. (Id.)

27      Plaintiff, in response, contends that the Release Agreement is illegal and

28 unenforceable as a matter of law and public policy. (Pl.'s Opp'n 5–11.) Specifically,

08cv0152W

1  Plaintiff argues that the Release Agreement was "confusing" and that Plaintiff had "little
2  choice" but to sign it in order to receive her severance package.[2]   (Id. 6–7.)
3  Furthermore, Plaintiff argues, California Labor Code section 206.5 prohibits an
4  employee from releasing wage and hour claims unless the employer first pays those
5  claims. (Id. 8–11.)

6      California law strongly favors the settlement of disputes and the enforcement of
7  releases.  See In re Marriage of Hasso, 280 Cal. Rptr. 919, 925 (Cal. Ct. App. 1991);
8  Stambaugh v. Superior Court, 132 Cal. Rptr. 843, 846 (Cal. Ct. App. 1976).  However,
9  California Labor Code section 206.5 states:

10     No Employer shall require the execution of any release of any claim or
       right on account of wages due, or to become due, or made as an advance
11     on wages to be earned, unless payment of such wages has been made. Any
       release required or executed in violation of the provisions of this section
12     shall be null and void as between the employer and the employee and the
13     violation of the provisions of this section shall be a misdemeanor.

14     Courts construing section 206.5 have concluded that, upon termination of an
15  employee's services, the employer is bound to pay the employee all wages conceded to
16  be due, and can require no condition in connection with this payment. Sullivan v. Del
17  Conte Masonry Co., 48 Cal. Rptr. 160, 163 (Cal. Ct. App. 1965).  However, the statute
18  only bars conditions (like releases) where an employer concedes that wages are due; that
19  is, nothing prevents the release of wage and hour claims where a bona fide dispute exists
20  over whether wages are in fact due.  Reynov v. ADP Claims Serv. Group, Inc., No. C
21  06-2056 CW, 2007 U.S. Dist. LEXIS 31631 (N.D.Cal. April 30, 2007) (analyzing
22  legislative history and Sullivan, 48 Cal. Rptr. at 163) (emphasis added).

23     As a threshold issue, the Court finds that the Release Agreement is not confusing
24  and clearly distinguishes what rights and obligations Plaintiff released, and what rights

25

26  _____

27  [2]Because neither Plaintiff nor Defendants question the authenticity of the Release
    Agreement attached to Defendants' Rule 12(b)(6) motion, the Court properly considers the
28  Release Agreement although not included within the "four corners" of Plaintiff's Complaint.
    See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by
    Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002).

08cv0152W

1  and obligations Plaintiff retained.  Additionally, this appears to be a typical situation

2  where Plaintiff agreed to release certain claims in exchange for severance benefits not

3  otherwise earned.  See, e.g., Fox v. Rodel, Inc., 1999 U.S. Dist. LEXIS 12246, at *21–22

4  (D.Del. July 14, 1999) (approving of litigation carve-out provision in employee release

5  agreement).  At any rate, Plaintiff has not made any legally cognizable arguments that

6  Defendants procured the Release Agreement by fraud or by procedurally or

7  substantively unconscionable means.  Therefore, because the Release is otherwise valid,

8  the Court next turns to whether section 206.5 prevents its enforcement.

9       California Labor Code section 206.5 does not bar enforcement of Plaintiff's

10  Release.  This is because nowhere does Plaintiff allege that Defendants concede that

11  wages were due, but that Defendants forced Plaintiff to release her wage claims in

12  exchange for some other benefit.  By contrast, Plaintiff's Release admits "I agree that

13  [Defendants have] paid me all compensation (including without limitation all salary,

14  bonus, incentive and overtime payments) that I have earned on or before the date I sign

15  below...."  (Defs.' Mot. 7.)  Even if, at the time Plaintiff executed the Release in

16  exchange for severance benefits, Plaintiff and Defendants disagreed over whether

17  Plaintiff was owed additional overtime, nothing prevents an employer and employee

18  from compromising a bona fide dispute over wages.  See Reynov, 2007 U.S. Dist. LEXIS

19  31631, at *9 (holding that where a bona fide dispute exists, overtime pay cannot be

20  considered "concededly due").

21       Although Plaintiff cites much California law emphasizing the sanctity of wages

22  and overtime compensation, (Pl.'s Opp'n 8–9), nowhere does Plaintiff allege section

23  206.5's threshold requirement—that Defendants conceded that they owed outstanding

24  wages.  Plaintiff generally argues that "by Defendants [sic] own admission, Plaintiff was

25  entitled to overtime wages."  However, Defendants only admit to classifying Plaintiff as

26  non-exempt and, in some prior instances, paying her overtime; this does not concede

27  a failure to pay additional overtime wages due.  If anything, Plaintiff has already conceded

28  that Defendants have paid her all wages due.  (Release Agreement 9 ("I agree that

- 6 -

1  [Defendants have] paid me all compensation...).)  At the very least, the parties have a

2  bona fide dispute over whether Defendants accurately compensated Plaintiff for each

3  hour of her employment at JP Morgan.[3]  This disagreement renders California Labor

4  Code section 206.5 irrelevant. <u>See</u>, <u>e.g.</u>, <u>Reid v. Overland Machine Products</u>, 359 P.2d

5  251, 253 (Cal. 1961) ("An employer and employee may of course compromise a bona

6  fide dispute over wages...").[4]

7        Because Plaintiff does not allege that she was forced to release her state wage and

8  hour claims as a condition for Defendants paying some portion of wages concededly

9  owed to her, California Labor Code section 206.5 does not bar enforcement of the

10 clause releasing "any claims under any federal, state or local law..." (*Release Agreement*

11 8.)  Thus, the Release Agreement prevents Plaintiff from bringing any state wage and

12 hour claims. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's

13 second (overtime), third (meal breaks), fourth (rest breaks), fifth (civil penalty), sixth

14 (record keeping), seventh (business expense) and eighth (unfair competition) claims.

15 <u>See</u> <u>Reynov</u>, 2007 U.S. Dist. LEXIS 31631, at *11 ("Because the release [plaintiff]

16 signed is legally enforceable, [plaintiff's] claims for compensation for overtime, waiting

17 time, meal and rest periods and civil penalties must fail.  Likewise, his... cause of action

18 alleging that [defendant] engaged in unfair business practices must be dismissed.");

19 <u>see also</u> <u>Simel v. JP Morgan Chase</u>, 2007 U.S. Dist. LEXIS 18693, at *12 (S.D.N.Y. Mar.

20 19, 2007) (discussing courts' reluctance in extending the FLSA's expressed limitation

21 of waiver to other statutory rights).

---

22
23  [3]Additionally, Defendants argue that "it is Defendants' position in this lawsuit that [Plaintiff] has been paid all wages due to her." (*Defs.' Reply* 6 n.1.)

24  [4]Plaintiff has also cited a few additional cases: Order, <u>Zheng v. Siebel Systems, Inc.</u>, Civ.
25  No. 435601 at 7–8 (Cal. Sup. Ct. County of San Mateo May 31, 2006); <u>Warner v. Experian Information Solutions, Inc.</u>, No. BC362599 at 7 (Cal. Sup. Ct. County of Los Angeles Sept.
    21, 2007); <u>Kelley v. Pacific Telesis Group</u>, No. 97-cv-02729 CW (N.D.Cal. July 25, 2000).
26  Unfortunately, Plaintiff does not attach any of this unpublished authority to her motion or cite
    to any electronic database where this authority might be found.  Despite the Court's best efforts
27  in locating the <u>Zheng</u> and <u>Warner</u> cases, searches in both LexisNexis and Westlaw were
    conducted without success. Similarly, the <u>Kelley</u> order was not available on the Northern
28  District of California's PACER site.  Accordingly, the Court could not gauge the effectiveness
    of Plaintiff's analysis.

08cv0152W

## B.     Plaintiff's Federal FLSA Claim

### I.     Waiver

Defendants argue that Plaintiff, by signing the Release Agreement, waived her ability to proceed with a FLSA collective action. (*Defs.' Mot.* 8–9.) Plaintiff, in response, contends that FLSA rights are unwaivable and cannot be abridged by contract. (*Pl.'s Opp'n* 11–12.) Both parties are correct.

For the purposes of this Rule 12(b)(6) motion, it suffices to say that while individual FLSA rights cannot be waived, Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 740 (1981), it is clear that a party may waive the right to bring a collective FLSA action. See Horenstein v. Mortgage Market, Inc., 9 Fed. Appx. 618, 619 (9th Cir. 2001) (holding that plaintiffs who knowingly signed an arbitration agreement abandoned their right to enforce their FLSA claims as part of a class action). From the information before the Court, it appears that Plaintiff has probably waived her right to bring a class or collective action under Rule 23 and/or the FLSA. However, the Court need not decide that issue today—this question is best answered at the class certification stage.

Under Rule 12(b)(6), the Court must decide whether the facts, as alleged, support any valid claim entitling plaintiff to relief—even if that claim is not necessarily the one intended by plaintiff. Haddock v. Board of Dental Examiners of Calif., 777 F.2d 462, 464 (9th Cir. 1985). Here, the Release Agreement specifically carves out the right to bring an individual FLSA claim for failure to pay overtime, and by construing Plaintiff's Complaint in the most favorable light the Court concludes that Plaintiff has stated an individual claim for overtime wages under the FLSA. (See *Compl.* ¶¶ 51–57.) Under Rule 12(b)(6)'s lenient standard, the fact that Plaintiff also alleges the (potentially waived) right to proceed collectively is not fatal to her individual claim. Whether or not Plaintiff can proceed collectively or represent a class will be decided at a later stage of this litigation.

08cv0152W

### ii.    *Standing*

Defendants argue that Plaintiff lacks standing to pursue her claims because she was eligible for and received overtime compensation. (*Defs.' Mot.* 10–13.) Plaintiff contends, in response, that regardless of her classification she did not receive wages, including overtime wages, for all hours worked in excess of forty per workweek and/or eight per day. (*Pl.'s Opp'n* 14.)

Because standing is a jurisdictional issue, federal courts treat motions to dismiss for lack of standing under Rule 12(b)(1). See <u>Alliance for Environmental Renewal, Inc.</u> <u>v. Pyramid Crossgates, Co.</u>, 436 F.3d 82, 88 n.6 (2d Cir. 2006). In resolving a Rule 12(b)(1) motion, the Court is not limited to the Complaint's allegations, but may consider extrinsic evidence in determining whether Plaintiff lacks standing. <u>Roberts v.</u> <u>Corrothers</u>, 812 F.2d 1173, 177 (9th Cir. 1997).

A plaintiff must satisfy three elements in order to have standing to bring a claim: (1) she must have suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). The burden of proof rests with Plaintiff. <u>Stock West, Inc. v. Confederate Tribes of Colville</u> <u>Reservation</u>, 873 F.2d 1221, 1225 (9th Cir. 1989).

The standing issue is a messy one for Plaintiff, Defendants and the Court because it appears that Plaintiff's boilerplate collective/class action complaint fails to competently reflect Plaintiff's particular, individual grievances. For instance, the bulk of Plaintiff's Complaint implies that Plaintiff, and other similarly situated Loan Officers, were mis-classified as "exempt" employees and denied *any* overtime and FLSA-provided benefits. (See *Compl.* ¶¶ 11, 13, 18–22, 24, 33, 54, 60.) However, the parties' moving papers and declarations agree that Plaintiff was actually a non-exempt employee who in fact received, at times, some overtime compensation. (*Defs.' Mot.* 13; *Mills Decl.* Ex. 2; *Pl.'s Opp'n* 14; *Jimenez Decl.* ¶¶ 5, 7, 14.) Indeed, Plaintiff's Opposition re-frames her

1  argument under the theory that Defendants failed to compensate her for *all* time worked

2  over forty hours, rather than *any* time. (*Pl.'s Opp'n* 14.)[5]

3      Considering Plaintiff's Complaint and declarations, the Court concludes that

4  Plaintiff has met her burden in proving that she has standing to press an individual

5  FLSA claim. Although her Complaint spends much time alleging away any applicable

6  exemptions on behalf of Plaintiff and the putative class, the Court gives Plaintiff every

7  benefit of the doubt and finds these allegations merely irrelevant, rather than

8  inconsistent. (See *Compl.* ¶¶ 11-25.) Regardless, Plaintiff presents allegations that she

9  was not fully compensated for all hours worked in excess of forty per week and eight per

10  day—this is enough to state an individual FLSA claim. Contrary to Defendants'

11  assertions, evidence that Plaintiff received *some* overtime pay does not mean she

12  received *all* overtime pay due to her; at any rate, analyzing pay stubs and overtime

13  records is not appropriate at this stage of the litigation.

14      Because Plaintiff generally alleges that she suffered injury when Defendant failed

15  to pay her overtime, the Court would potentially be able to provide redress under the

16  FLSA if Plaintiff presented evidence proving her allegations. Thus, Plaintiff has

17  technically met the standing requirements for bringing an individual FLSA claim.[6]

18  Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's first cause of

19  action.

20

21      [5]This standing analysis is also consistent with a liberal analysis under Rule 12(b)(6),
22  where the test is whether the facts, as alleged, support any valid claim entitling plaintiff to
relief—even if that claim is not necessarily the one intended by plaintiff. Haddock v. Board
23  of Dental Examiners of Calif., 777 F.2d 462, 464 (9th Cir. 1985).

24      [6]The Court declines to decide Defendants' arguments that Plaintiff lacks standing to
pursue injunctive relief and that Plaintiff does not have standing to pursue her class claims.
25  The inquiries under Rule 12(b)(6) or Rule 12(b)(1) is whether Plaintiff alleges facts sufficient
to prove standing and state a cause of action; a prayer for an improper remedy is not grounds
26  to grant either motion. Doe v. United States Dept. of Justice, 753 F.2d 1092, 1104 (D.C. Cir.
1985). Additionally, Plaintiff's suitability to represent a class will be determined at the
27  certification stage. From the information before the Court, however, Plaintiff appears to be an
unlikely candidate to represent overtime claims for any class of JP Morgan Loan Officers, given
28  the differences in job duties and necessity of individual evidence. See Trinh v. JPMorgan
Chase & Co., No. 07-CV-1666 W (WMC), 2008 U.S. Dist. LEXIS 33016, at *8–*18 (S.D.Cal.
April 22, 2008).

IV.   CONCLUSION

Because Plaintiff voluntarily signed a Release Agreement in exchange for severance benefits, Plaintiff has waived her right to bring almost all state or federal claims against Defendants JP Morgan Chase & Co. et. al. California Labor Code section 206.5 does not bar enforcement of the Release Agreement because Defendants never conceded that Plaintiff was due any more compensation over what was previously paid.

However inelegantly drafted, Plaintiff has alleged sufficient facts to plead an individual FLSA claim for overtime wages. Although Plaintiff's prospects of bringing a collective/class action on behalf of "similarly situated" individuals appear dim, the Court declines to decide these issues under the instant Rule 12(b)(6) motion. For the above reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion to dismiss under Rule 12(b)(6) and Rule 12(b)(1). Plaintiff's second through eighth claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

DATED: May 8, 2008

_____
Hon. Thomas J. Whelan
United States District Judge